THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLENN E. NEUMANN, Defendant-Appellant.

Third District   No. 77-382

Opinion filed September 12, 1979.—Rehearing denied October 11, 1979.

Stanley L. Tucker and John R. Glidden, both of Hartzell, Glidden, Tucker & Neff, of Carthage, for appellant.

Patrick Corcoran, State's Attorney, of Carthage (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Glenn E. Neumann appeals from a conviction of misdemeanor theft through assertion of unauthorized control over property of a value of less than $150 in violation of section 16—1(d)(1) of the Criminal Code of 1961. (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(d)(1).) The conviction followed a trial by jury which found defendant guilty of the charge. The circuit judge of Hancock County in the case sentenced defendant to six months' imprisonment and ordered him to pay court costs.

The record discloses that on Friday morning, July 9, 1976, at approximately 7:30 a.m., Roy Edward Haas, owner of a farm one mile north of Powellton in Hancock County found the gate to his hog pen open and discovered tire tracks leading to the pen. Haas found 20 hogs, valued at $60 each, were missing.

In the trial, in response to the prosecutor's question as to where he was on July 9, 1976, Alfred Hempen (charged jointly in the theft) testified that he was out looking for hogs to steal. He said that he had been with John Habben that day and Habben and the defendant that evening. Hempen testified that he, Habben and defendant left that evening in defendant's truck. They drove to a hog lot about one mile north of Powellton and arrived there at approximately 12:30 to 1 (at night). Habben and Hempen then loaded the hogs onto the truck as defendant stood beside it. The three then drove back to Habben's place and unloaded the hogs. Hempen testified that the hogs were sold the very next day—Saturday (apparently meaning July 10), stated by Hempen to be "the same day we dropped them off at John's [Habben]."

On cross-examination, Hempen stated that he was testifying because

of a deal he had made with the State. He added that he had pleaded guilty to another theft charge as to hogs from the same victim, Haas, which he committed on June 17, 1976, accompanied by Habben.

Defendant, in a written statement made to police before the trial, admitted participating in the theft of the hogs, which, according to the statement, occurred "on or about July 9, 1976." That statement was admitted into evidence.

Defendant testified at his trial and there denied that he had been with Hempen and Habben when they stole the hogs and also denied that he had stolen the hogs. He testified that at the time of the offense he was at his mother's house in Salem, Missouri, approximately 225 miles from his Hancock County home. He also testified that all day July 9, 1976, he was at home with his wife (then his girlfriend) Keela Neumann. Defendant's mother testified that defendant had come to Salem on his motorcycle for the July 4 weekend, but had trouble with the motorcycle. She stated that as a result of the trouble with the motorcycle, defendant returned to Hancock County in her car on Monday, July 5, 1976. Defendant's mother testified that defendant returned to Salem from Hancock County at approximately 10:15 p.m. on July 9, 1976. She said that it takes 5 to 6 hours to drive to Salem from Hancock County. Defendant's mother said that defendant stayed with her until after dinner on Sunday, July 11, 1976.

Defendant's wife, Keela Neumann, testified that she and defendant were asleep at 12:01 a.m. on July 9, 1976. She added that defendant did not go to work on July 9 and that she left with defendant for Salem at 4 p.m. on July 9, arriving in Salem at 10:30 p.m.

On November 5, 1976, at approximately 10:55 p.m., Sheriff Dick Yager arrived at defendant's home and took defendant to the Hancock County jail in Carthage to interrogate him about the hog theft. Defendant stated, in the trial, that when the sheriff "arrested" him, the sheriff told him he would be able to return home within an hour. Defendant's wife testified that upon leaving, defendant told her he was going to Carthage with the sheriff and would return in an hour. The sheriff testified that he told defendant, in response to defendant's question about how long the interrogation would last, that he would be allowed to return home in an hour "if everything turned out all right." The sheriff added that before going to defendant's house, he was certain defendant had committed the theft, and that the interrogation couldn't possibly turn out "all right" for defendant. Defendant was not permitted to return home in an hour.

Defendant also testified that during the interrogation at the jail, the sheriff told him that he would not be charged with a felony and would be allowed to go home within an hour if he signed a confession. Defendant added that the sheriff wanted him to cooperate in building a case against Habben.

Sheriff Yager testified that he did not make any "deal" with defendant and that he did not promise to charge defendant with a misdemeanor or to let him go within an hour in return for defendant's signing the confession. The sheriff, however, conceded that he told defendant "that a misdemeanor would suffice as far as I was concerned but that would have to be squared with the State's Attorney." The sheriff added that Habben was believed to be the leader of the theft ring.

The sheriff testified also that before interrogating defendant, he advised defendant of his *Miranda* rights. Defendant also testified that the sheriff had read the constitutional rights form to him. According to the sheriff, defendant consented to the interrogation and executed a signed written statement, confessing to the theft of hogs. Defendant was booked and held in jail on a felony theft charge because he was unable to post bond. Three days later a formal charge of misdemeanor theft was filed against defendant.

Prior to the trial, defendant moved to suppress the statement he made on November 5, 1976, on the ground, among others, that the statement was elicited from him by what he described as "promises and mental coercion," rendering the statement involuntary. The motion filed by defendant was denied.

■■ On appeal in this court, defendant first contends that the trial court erred in failing to suppress the confession because the confession was elicited from him by promises of leniency, making it involuntary and inadmissible, according to the established rule recited in *People v. Campbell* (1935), 359 Ill. 286, 291, 194 N.E.2d 533:

> "It is an established rule that a confession obtained by promise or hope of reward is not admissible in evidence."

As stated in *People v. Slaughter* (1978), 59 Ill. App. 3d 159, 161-62, 376 N.E.2d 33, 35:

> "Where a statement is given in consideration of promises of leniency or immunity, it is not voluntarily given and is therefore inadmissible."

In the instant case, however, the evidence on this issue was conflicting. Defendant testified that the sheriff told him that he would not be charged with a felony and would be allowed to go home within an hour if he signed a confession. The sheriff, however, denied making any such promises and stated that only in response to defendant's question as to how long the interrogation would last, he had told defendant, at defendant's home, that defendant would be allowed to return home in an hour "if everything turned out all right." Defendant claims that the fact that he was first booked on a felony charge, but was later charged with a misdemeanor, even though the evidence would have supported a felony theft charge, strongly supports defendant's testimony that he was

promised leniency in exchange for the confession. We have, however, previously held, in *People v. Graham* (1975), 25 Ill. App. 3d 853, 857, 323 N.E.2d 441, 444, that:

> "[T]he State's Attorney as representative of the People is vested with discretion and responsibility to determine which crimes should be charged and what penalties should be sought in criminal cases [citation.]"

In the instant case, the sheriff stated that defendant's accomplice, Habben, was believed to be the leader of the theft ring. There was also evidence in the cause that Habben and the third accomplice, Hempen, had committed a similar crime on June 17, 1976, when they were not accompanied by defendant and that the only reason they asked defendant to join them in the July theft was because they needed his truck. In light of these facts, it is probable that the State's Attorney exercised his discretion in charging defendant with the lesser offense, for the reason that defendant became involved secondarily through the others, Habben and Hempen, to carry out the theft.

■■ In the *Slaughter* case to which we have referred, there was also a conflict in the testimony as to whether defendant's confession had been elicited by a promise of leniency. The defendant claimed in that case that there had been such a promise, but two police officers, an assistant State's Attorney and a court reporter, all of whom were present when defendant made his confession, testified that no promise of leniency had been made to defendant. In affirming the trial court's refusal to suppress the confession, we stated in *Slaughter* (59 Ill. App. 3d 159, 162, 376 N.E.2d 33, 35) that:

> "The credibility of the witnesses and the weight to be given their testimony are questions for the trial court [citation], and a court of review will not disturb the trial court's determination as to the voluntariness of defendant's statement absent a showing that it is contrary to the manifest weight of the evidence [citation]."

Similarly, in the instant case, it was the trial court's function to judge the credibility of the witnesses. In performing this function, the trial judge in the instant case obviously believed the sheriff and did not believe defendant. As a result of the trial court's determination that no promises of leniency had been made and that the confession was made voluntarily, it appears that the trial court properly was able to determine from the evidence that the confession had been made voluntarily.

■■ Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt. The thrust of this argument is that the testimony of defendant's mother, his wife and defendant's testimony conclusively put him in Salem, Missouri, at the time the crime was being committed in Illinois, at approximately 12:30 to 1 a.m. on July 10, 1976.

The evidence is, however, conflicting as to on what day the crime was committed. The testimony of defendant's accomplice, Hempen, indicates the crime was committed during the early morning hours of July 10, 1976. Hempen testified that he had been with defendant and John Habben the evening of July 9, 1976 and that he left with them to steal hogs that night, arriving at the hog pen at approximately 12:30 to 1 a.m. The victim, farmer Haas, testified, however, that the hogs were missing on the morning of July 9, 1976, at approximately 7:30 a.m. If the Haas testimony is accurate, it would have been impossible for defendant and his accomplice to have stolen the hogs in the early hours of July 10. Defendant, in his confession, stated that the theft occurred "on or about July 9, 1976." In light of the testimony in the record, the jury may have believed that Hempen was confused about the dates but that his testimony was otherwise believable. This would put the time of the crime at the early morning hours of July 9. If this is the time when the theft occurred, defendant's alibi that he was in Salem on the evening of July 9 and the morning of July 10 would be irrelevant. Even if the jurors believed that the crime occurred in the early morning hours of July 10, it was the province of the jury to disbelieve the alibi witness testimony. This is particularly true where the three alibi witnesses were the mother, the wife and the defendant, who all had a great interest in defendant being found not guilty. As the supreme court stated in *People v. Brown* (1972), 52 Ill. 2d 94, 105-06, 285 N.E.2d 1, 8:

> "It was the function of the jury to make a determination of the credibility of the alibi witnesses and of the weight to be given to the totality of the testimony. We cannot overturn the verdict of the jury simply because the evidence presented to it was conflicting."

If the jury believed that the crime occurred during the early morning hours of July 9, 1976, defendant had an alibi for this time also, since his wife testified that she and defendant were asleep at 12:01 a.m. on July 9. If, however, this were true, it still would not have prevented defendant from stealing hogs later on during the morning of July 9.

The evidence against defendant including his confession, the testimony of Hempen and the testimony of farmer Haas, established that there was a theft, although a conflict in dates existed. The evidence was sufficient for the jury to have found the defendant guilty beyond a reasonable doubt.

Defendant's final contention is that the trial court erred in giving the jury the following instruction:

> "The Complaint states that the crime charged was committed on the 9th day of July, 1976. If you find that the crime charged was committed, the State is not required to prove that it was committed on that particular date." (Illinois Pattern Jury

Instructions, Criminal, No. 3.01 (1968) (hereinafter IPI Criminal).)

Defendant contends, without any supporting authority, that the effect of the instruction is to relieve the State of the burden of proving beyond a reasonable doubt that defendant was in Illinois on the date the crime was committed. We have already observed that there was sufficient evidence for the jury to have found defendant guilty beyond a reasonable doubt. Thus, by implication, there was sufficient evidence for the jury to have found, beyond a reasonable doubt, that defendant was in Illinois on the date the crime was committed. As stated in *People v. Olroyd* (1929), 335 Ill. 61, 68:

> "It is the general rule of law that the date alleged in the indictment is not material, and that it is sufficient if the prosecution proves that the offense charged was committed at any time within the period of the Statute of Limitations and prior to the returning of the indictment, and in the ordinary case it is not error to so instruct the jury."

In the instant case, the jury was told by the instruction that if it believed, beyond a reasonable doubt, that defendant had stolen the hogs, it did not matter if they believed he had stolen them on the 8th, 9th or 10th of July. Obviously, if the jurors believed defendant stole the hogs during the early morning hours of July 10, they had to disbelieve the alibi witnesses who put him in Salem at that time. Also, if the jurors believed defendant stole the hogs during the early morning hours of July 9, they are required to disbelieve the alibi witness (defendant's wife) who testified defendant was sleeping at 12:01 a.m. July 9, or at least to believe that he may have been there at that time and left in time to complete the theft with his companions.

We conclude, on the basis of the record, that the instruction did not improperly prejudice defendant. We note that in the Committee Note accompanying IPI Criminal No. 3.01, it is stated:

> "To be given only when there is a variance between the date alleged in the indictment and the evidence, and all dates are within the period of limitations."

In the instant case, the complaint alleged that the offense was committed on July 9, 1976, while the evidence indicated that the offense may have been committed on either July 9, 1976, or on July 10, 1976. Thus, on the basis of the Committee Note, the instant case was the type of case in which the instruction number 3.01 is to be given.

On the basis of the record, therefore, we believe that the trial court was justified in finding that defendant's confession was voluntary and, also, that the jury finding that defendant was guilty beyond a reasonable doubt is supported by the evidence. The court also properly determined

that no reversible error was committed by the instruction to the jury that the State is not required to prove that the crime charged was committed on a particular date.

For the reasons stated, therefore, the judgment of the Circuit Court of Hancock County, and the sentence imposed, are affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.