THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY BARLOW, Defendant-Appellant.
First District (1st Division) No. 1—86—3309

Opinion filed June 26, 1989.—Rehearing denied October 11, 1989.

394

Randolph N. Stone, Public Defender, of Chicago (Mark H. Kusatzky and Aaron Meyers, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Lauren A. Freeman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Larry Barlow, was convicted of aggravated criminal sexual assault on T.L., his 10-year-old stepdaughter, and sentenced to a prison term of 20 years. On appeal, defendant contends that: (1) the methods and procedures used to charge him violated his constitutional rights of due process by denying him notice of the crimes of which he was accused and by denying him the right to present a defense; (2) the trial court erred in granting Illinois Pattern Jury Instructions, Criminal, No. 3.01 (2d ed. 1981) (hereinafter IPI Criminal 2d) because it relieved the State of its burden of proving the date of the alleged incident, thereby denying defendant the opportunity to adequately prepare a defense; (3) the trial court erred in permitting the State to introduce other crimes evidence when there was no other crime; (4) the trial court's erroneous evidentiary rulings deprived defendant of the opportunity to present a reasonable defense; and (5) the State failed to prove defendant guilty of aggravated criminal sexual assault beyond a reasonable doubt. For the following reasons, we affirm the judgment of the trial court.

The record sets forth the following facts. On March 25, 1986, defendant was charged under indictment No. 86—3586 with aggravated criminal sexual assault predicated on defendant's alleged act of

forcefully inserting his finger into T.L.'s vagina on or about March 1, 1986. At the same time, defendant was also charged under indictment No. 86—3587 with aggravated criminal sexual assault predicated on defendant's alleged act of forcefully committing an act of sexual penetration between his penis and T.L.'s vagina on or about March 2, 1986, and continuing through March 3, 1986. Originally, the State had elected to proceed on indictment No. 86—3586. However, on October 10, 1986, the State changed its election to proceed on indictment No. 86—3587. Defense counsel objected on the grounds that the State's bill of particulars stated that the events occurred about March 1, 1986, through March 3, 1986, which differed from the dates on indictment No. 86—3587. Because of this difference, defense counsel contended that she had insufficient information to proceed on the indictment. In response, the State requested leave to file an amended bill of particulars, stating that the incident had occurred between March 1 and March 5, 1986. The State explained that this "spread of the days" was the best it could do with the information it had. The State further explained that the facts regarding the offense would not change. Thus, the State argued that there would be no prejudice to the preparation of defendant's defense. The court granted the State's leave to amend and continued trial for two weeks to allow the defendant to prepare his defense regarding the extended time period.

On the day trial was to commence, prior to jury selection, the State amended its indictment with respect to the occurrence dates to conform with the previously amended bill of particulars. In addition, the State filed a notice of intent to use proof of other crimes. Specifically, the State intended to use proof of the finger penetration act which was the subject of indictment No. 86—3586. After verifying that the finger penetration act had involved the same parties at the same location as the crime charged, the trial court allowed introduction of the other crime.

At trial, Dr. Suresh Shah, emergency room physician at South Chicago Community Hospital, testified that on March 5, 1986, approximately 11 p.m., he examined T.L. He conducted a special examination to determine if there had been any sexual intercourse or trauma to T.L.'s genital area or internal organs. Dr. Shah had observed that T.L.'s hymen had been ruptured, that there was "much more white discharge coming out from the external vaginal orifice," and that she was nervous and somewhat fearful. Dr. Shah stated that the ruptured hymen was consistent with penetration by a blunt object such as a finger or penis, or it may have been ruptured by riding a bicycle or falling.

On cross-examination, Dr. Shah testified that T.L. had told him

that her stepfather, defendant, had put his penis inside of her on Sunday, Monday and Tuesday (March 2, 3 and 4). T.L. also told him that she did not remember any of the details.

Following *voir dire* of T.L., the trial court found her competent to testify and she took the stand. During direct examination, T.L. stated that in March 1986, she lived with her mother, stepfather, brother and sister in a one-bedroom apartment. T.L. slept with her younger sister on the bottom bunk of a bunk bed and her brother slept on the top bunk. There was also another full-size bed in the room. Her mother and stepfather slept in the living room. T.L. stated that on the afternoon of the first Saturday in March (March 1), while her mother was at the store, defendant asked her to come into the bedroom. He then pulled down her pants and stuck his finger into her vagina. When he finished, defendant told her not to tell anyone, and she went into the washroom and wiped her vagina with a towel.

T.L. further testified that on the night of March 4 into the morning of March 5, defendant had come into her bedroom. Her brother was at her grandmother's house that night. Defendant put a pillow over her face, took his clothes off and climbed onto the bed on top of her, and pulled her pants down. When asked if defendant had done anything with his penis, T.L. answered "yes," but failed to respond to the question asking what he had done. After a few more questions, T.L. stated that defendant's penis had touched her butt and nowhere else. T.L. then identified her "butt" as her "back." T.L. also said that defendant had been moving while he was on top of her. The moving part touched her back and his penis went into her butt. When defendant had completed the act, he went to the bathroom. T.L. stated that she started to cry, then fell asleep. When she woke up a short time later, she washed her vagina with a towel. While washing, she noticed some "white stuff" on the back of her thigh.

Later that day, approximately 5:30 p.m., while T.L. was walking down the street with her mother, her mother noticed that something was bothering T.L and asked her about it. At first, T.L. said it was nothing because she was scared that she would be punished. When her mother reassured her that she would not be punished, she told her mother what defendant had done to her. Her mother then took T.L. to the doctor.

On cross-examination, T.L denied telling the nurse at the hospital that defendant "had put his thing inside of [her] on March 2, on March 3, and March 4, always at night"; denied telling the nurse that anal sex had not occurred; denied telling Dr. Shah that defendant "had put his thing inside of [her] on Sunday, Monday, and Tuesday"; and denied

having told Dr. Shah that she could not remember any of the details. T.L. could not remember on what dates defendant had worked during the first week in March, but remembered that he had not worked on the first Saturday when the alleged finger penetration had occurred. When T.L.'s mother had asked her about the blood on the towel, she had told her mother that the blood was from her menstrual period.

When asked about the night that defendant had put the pillow over her face, T.L. stated that she could see a little bit around the edge of the pillow. At one point during cross-examination, T.L. stated that she had been lying on her back "at first." Later, she denied ever turning over onto her stomach. When asked by defense counsel, "So, Larry [defendant] never put his penis in your rectum or in your butt, did he?" the following exchange occurred:

"A. That wasn't then.

Q. What wasn't then? He did not put his penis in your rectum during this period?

A. You are just trying to make me lie.

Q. I'm not trying to make you lie. I'm trying to make you tell the truth.

THE COURT: Don't argue with the witness. [T.L.], answer the questions, just as best you can, but you have to answer the question.

Q. During this period of time that you are telling us today that you say that Larry was in your room, did he ever put his penis in your butt? Yes or no?

THE COURT: Get a tissue, please.

THE SHERIFF: Sure.

THE COURT: [T.L.], did he put his penis in your butt during the period of time that you already told us about? Would you answer the question, [T.L.]? Ask another question please."

T.L. further testified that she had told the police officers at the hospital that defendant started having sex with her on Sunday (March 2). She denied having told the police that defendant had also had sex with her on Monday and Tuesday (March 3 and 4) nights. T.L. also denied having told the detectives at the hospital that an assault had occurred on March 2 about 2:30 a.m., but admitted telling them that an assault had occurred on March 3 at 5:30 a.m. On redirect, T.L. stated that on the same night defendant had put his penis in her vagina, he had put it in her butt.

Next, C.B., T.L.'s mother, testified that on the night of March 4, 1986, she and defendant had stayed up and talked until about 5 a.m. After going to sleep, she was awakened by a noise at approximately

5:30 a.m. She got up, turned the radio volume down and listened, but did not hear anything else, so she turned the radio volume back up. Defendant was not in the bed at the time. Approximately 6:45 a.m., T.L. came into C.B.'s room and told her that she was getting ready to go to school. This was unusually early for her.

C.B. next saw T.L. at her mother's house at approximately 5:30 p.m. later that day. When C.B. told T.L. that they were going to go to defendant's mother's house, T.L. looked "real funny" and told her that she did not want to go. When C.B. asked T.L. what was wrong, T.L. would not tell her at first. However, when C.B. told her that she would not be punished, T.L. told her that defendant had been "fiddling on her" early that morning and he had pulled his pants down and had put his "thing" in her. She then pointed to her vagina. Later that evening, C.B. took T.L. to the hospital. At the time, T.L. was crying.

At the close of the State's case in chief, the trial court denied defendant's motion for a directed verdict. Defendant's first witness, Chicago police detective Sammie Lacey, testified that on March 5, 1986, he spoke with T.L. at South Chicago Community Hospital. When asked if T.L. had told him that she had had sexual contact with her stepfather on March 1, Lacey replied that, "She didn't give us the exact date. *** The time was kind of foggy." Lacey further stated that T.L. "couldn't distinguish from the dates," and reiterated that T.L. had been confused about the dates several times. When asked about the dates in his police report, Lacey answered,

"Okay. On these dates she was giving, the little girl herself was not supplying the dates. I believe the mother gave us, you know, those dates that she surmised what dates they happened."

Lacey further stated that T.L. had told him that there had been three incidents and, based on that information, he and the mother arrived at the dates. On cross-examination, Lacey stated that while he was asking T.L. questions at the hospital, T.L. appeared nervous, somewhat upset and a little afraid to speak to the detectives.

Next, Wilson Cooper, field supervisor for Burns Security, defendant's employer, testified that pursuant to the company's final time sheets, defendant had worked the 4 p.m. to midnight shift on March 2, 3 and 4. The records indicated that defendant had not worked on Saturday, March 1 or on Wednesday, March 5.

Chicago police officer Clifford Doyle then testified that he had spoken to T.L. at the hospital in the presence of her mother and a nurse. Doyle stated that T.L. had told him that defendant had started to touch and feel her on Sunday, March 2 and that different sexual things then happened on different nights. On cross-examination, Doyle testi-

fied that T.L. had told him that defendant had had vaginal sex with her.

Next, Sylvia Lizcano, nurse at South Chicago Community Hospital, testified that she had interviewed T.L. at approximately 9 p.m. on March 5, 1986, at the hospital and had described what anal sex and oral sex were to her. T.L. had denied that either had occurred. When queried as to specific dates of the alleged sexual acts, Lizcano stated:

"She did state for three days in a row and at the time, I think—I don't know if she said Monday, Tuesday, Wednesday, but I wrote it as the dates.

So, she wasn't telling me, you know, on what specific dates. She just gave me—and it was—I don't know what day—*** ."

On cross-examination, Lizcano stated that T.L. had been very upset and frightened when at the hospital. Her mother had also been very upset. Lizcano further stated that "it was hard for her to tell us what had happened, and we were in a private room, but she was still very upset and we had to try to get it out." When T.L. finally began to talk, she told Lizcano that defendant had been coming into her bed for three nights in a row and had put his "thing" inside of her.

As a rebuttal witness, Chicago police officer James O'Rourke testified that on March 13, 1986, he had talked to defendant at police headquarters and had asked him where he had been the first week of March 1986. Defendant had responded that "at certain times of the day, he was home at night." Thereafter, both sides rested.

Following closing arguments and deliberations, the jury found defendant guilty of the offense of aggravated criminal sexual assault on T.L. Judgment was entered on the verdict and the trial court sentenced defendant to a prison term of 20 years. Defendant's timely appeal followed.

Defendant first contends that the methods and procedures used for charging him violated his constitutional rights of due process by failing to give him notice of the crimes of which he was accused and by denying him the right to present a defense. Specifically, defendant claims that his ability to prepare and present a defense was fatally impaired when, two weeks prior to trial, the trial court granted the State leave to file an amended bill of particulars, changing the dates of the alleged incident from March 2 and 3 to in the morning between March 1 and March 5. Defendant also claims that the trial court further erred when, on the day trial was to commence, it allowed the State to amend the indictment to conform to the amended bill of particulars. Defendant asserts that the State's amendment to the indictment was improper because it did not merely cure a formal defect; it altered the charge in

a substantial and prejudicial manner. In response, the State asserts that the amendment to the indictment merely cured a formal defect regarding dates of the offense so as to conform the indictment to the amended bill of particulars. The State further contends that the amendment to the bill of particulars did not affect the elements of the charge in any way and gave defendant sufficient notice to prepare his defense as to the new dates.

■ Section 111—5 of the Code of Criminal Procedure of 1963 (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 111—5) provides that an indictment "may be amended on motion by the State's Attorney or defendant at any time because of formal defects." It is well recognized that the date of the offense is not an essential ingredient in child sex offenses. (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376.) Thus, a change in dates would not alter the substantive nature of the offense. The State need only establish that the offense charged was committed within the statute of limitations period and prior to the return of the indictment. *People v. Olroyd* (1929), 335 Ill. 61, 166 N.E.2d 462; *People v. Neumann* (1979), 76 Ill. App. 3d 112, 394 N.E.2d 901.

In the present case, indictment No. 86—3587 initially alleged that the incident had occurred "on or about March 2, 1986, and continuing on through March 3rd, 1986." The State's bill of particulars, filed May 9, 1986, indicated that the incident had occurred during the nighttime on or about March 1 through 3, 1986. The amended bill of particulars, filed on October 14, 1986, indicated that the date of the alleged incident was "on or about March 1st through the 5th, 1986, in the morning." This change was later reflected on the indictment by amendment. We note that there is no statute of limitations issue in the present case and the amended dates precede the return of the indictment. Therefore, we find that the incorrect dates on the original indictment constituted a formal defect which, pursuant to section 111—5 of the Code, could be cured by amendment.

Defendant further argues that the date change in the bill of particulars and the indictment deprived him of due process by keeping him "in the dark" as to the nature of the crimes with which he was charged. In response, the State contends that defendant was not denied due process where the charge stated the date as definitely as possible, the date alleged in the indictment was not a material element of the offense, the date was sufficient to show that the offense charged was committed within the statute of limitations period and the date preceded the return of the indictment.

As previously stated, because the date of the offense is not an es-

sential element in child sex offenses (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376), any change in the dates does not alter the nature of the crime charged. Moreover, pursuant to section 111—3(a)(4) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 111—3(a)(4)), a charge is sufficient if it is in writing and states "the date and county of the offense as definitely as can be done."

■ In the present case, the State indicated prior to trial that it had been as specific as to dates as it could be under the circumstances. The record supports this claim. Thus, we find that the amended time period satisfies the requirements of section 111—3(a)(4). In making this decision, we are cognizant that this court has recognized that in sex offense cases involving a parent and child, flexibility must be given to the requirement that a certain date be specified as to the occurrence. (*People v. Long* (1977), 55 Ill. App. 3d 764, 370 N.E.2d 1315.) Accordingly, because the amended dates did not alter the substance of the offense charged and the date complied with statutory requirements, we hold that the trial court properly allowed the State to amend the bill of particulars and the indictment.

Next, defendant contends that the trial court erred in granting IPI Criminal 2d No. 3.01, which relieved the State of the necessity to prove the date of the alleged incident. IPI Criminal 2d No. 3.01, as given by the trial court in the present case, stated:

"The indictment states that the offense charged was committed March 1st through the 5th, 1986. If you find that the offense charged was committed, the State is not required to prove that it was committed on that particular date."

Defendant contends that IPI Criminal 2d No. 3.01 validates all of the improper denials of the charge previously argued in issue I and improperly "told the jury that the 'time' factor was not important." In response, the State reasserts its position taken with respect to issue I, arguing that the trial court properly gave the instruction where the date alleged in the indictment is not material, and where the State proved that the offense charged was committed within the statute of limitations period and prior to the return of the indictment.

As previously discussed, well-established Illinois law supports the State's position: *People v. Olroyd* (1929), 335 Ill. 61, 166 N.E.2d 462; *People v. Vaughn* (1945), 390 Ill. 360, 61 N.E.2d 546; *People v. Neumann* (1979), 76 Ill. App. 3d 112, 394 N.E.2d 901. In *People v. Olroyd*, the Illinois Supreme Court held that the date alleged in an indictment is not material and that the State need only establish that the offense was committed within the relevant statute of limitations period and prior to the date the indictment was returned (the *Olroyd* test).

Subsequently, in *People v. Vaughn*, defendant, convicted of rape, argued on appeal, *inter alia*, that jury instruction No. 10 was unfounded. in reason, law and justice. Instruction No. 10 provided:

> "10. the Court instructs you that the date of the commission of the offense as charged in the indictment is not one of the material allegations of the indictment and need not be proven as alleged. In this case it is sufficient if any date within three years of the returning of the indictment into Court has been proven."

*Vaughn*, 390 Ill. at 370.

The *Vaughn* court found that the *Olroyd* test had been met and, thus, held that instruction No. 10 had been properly given. The *Vaughn* court further reasoned that if defense counsel felt the date of the offense should have been more specific, he should have requested a more specific bill of particulars.

Similarly, in *People v. Neumann* (1979), 76 Ill. App. 3d 112, 394 N.E.2d 901, defendant had objected to the use of IPI Criminal 2d No. 3.01 on the ground that it relieved the State of its burden of proving beyond a reasonable doubt that defendant was in Illinois on the date the crime had been committed. In reliance on *Olroyd*, the *Neumann* court found that IPI Criminal 2d No. 3.01 had been properly given.

As previously discussed, in the present case, the State has also satisfied the *Olroyd* test. Further, on its own volition, two weeks prior to trial, the State provided a revised bill of particulars to defendant stating the specific time period of the offense. In our view, this two-week period was sufficient time for defendant to establish an alibi defense for the amended time period.

■ Accordingly, because the date of the offense is not an essential element of the offense itself and because the time period set forth in the State's amended indictment satisfied the *Olroyd* test, we find that the trial court properly allowed IPI Criminal 2d No. 3.01 to be given to the jury.

Defendant next argues that the trial court deprived him of due process by permitting the State to introduce evidence of other crimes when: (1) the other crime was indistinguishable from the crime charged; (2) the alleged date of the other crime was uncertain; (3) jury instruction No. 3.14 inadequately distinguished between the other crime and the crime charged; and (4) the prejudicial effect of introducing evidence of the other crime outweighed any probative value.

Initially, the grand jury had returned two indictments against defendant. Indictment No. 86—3586 charged defendant with the offense of aggravated criminal sexual assault predicated on defendant's alleged act of forcefully inserting his finger into T.L's vagina on or

about March 1, 1986. Indictment No. 86—3587 charged defendant with the offense of aggravated criminal sexual assault predicated on defendant's alleged act of forcefully committing an act of sexual penetration between his penis and T.L.'s vagina on or about March 2, 1986, and continuing through March 3, 1986. The State elected to proceed on indictment No. 86—3587 and filed a notice of intent to use proof of the act alleged in indictment No. 86—3586. The trial court granted the State the right to use the finger penetration act as evidence of other crimes on the grounds that it had involved the same parties as the sexual penetration act and had occurred at the same location within a short period of time.

■■ With respect to his contention that the other crime (finger penetration) is indistinguishable from the crime charged, defendant argues that by broadening the time period in indictment No. 86—3587, the State had "included" indictment No. 86—3586, resulting in "one time frame split into two separate offenses where only one crime was alleged." Without any citation to legal authority or any evidence of prejudice, defendant claims that use of the other crime created confusion and emasculated his defense. Defendant's failure to provide this court with any legal argument or citation to supporting authority waives this issue for review. See *People v. Sassu* (1986), 151 Ill. App. 3d 199.

■■ Defendant also contends that the date on which the other crime was committed was as uncertain as the date for the crime charged and, thus, should not have been admitted into evidence. Specifically, defendant refers to the allegedly conflicting facts that: (1) indictment No. 86—3586 stated that the finger penetration had occurred "on or about March 1"; (2) the State's opening statement and T.L's testimony set the time of the finger penetration as the first week in March; and (3) the State indicated in closing argument that the finger penetration had occurred on Saturday, March 1. Apparently, defendant finds these references to the occurrence date contradictory because he claims that these statements as to the time period "do not meet even the lowest standards for proving the incident even took place" and that they prejudiced his defense. We find defendant's attempt to establish uncertainty of the other crime because of the varying references to what is clearly the same time period to be without merit. This is particularly true in light of the fact that the date is not even an essential element of the offense. *People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376.

With respect to defendant's contention that IPI Criminal 2d No. 3.14 inadequately distinguished between the other crime and the crime

charged, defendant argues that because no other crime existed, the jury instruction misled and confused the jury. Although it is not very clear, defendant appears to be basing his argument on the fact that both the other crime and the crime charged are aggravated criminal sexual assault offenses. However, defendant overlooks the pivotal distinction, *i.e,,* each offense was predicated on distinctly different sexual acts. The other crime was predicated on finger penetration. The charged crime was predicated on defendant's penis coming into contact with T.L.'s vagina. The distinction emphasized to the jury was between the underlying sexual acts.

In response to defendant's argument, the State asserts that IPI Criminal 2d No. 3.14 was introduced to avoid prejudice to defendant and to limit the purpose of the evidence of the other crime to show defendant's intent and design. IPI Criminal 2d No. 3.14 provides:

"Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's intent and design. This evidence may be considered by you only for the limited purpose for which it was received."

In support of his position, defendant relies on *People v. Foster* (1974), 23 Ill. App. 3d 559, 319 N.E.2d 522, *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526, and *People v. Richards* (1978), 64 Ill. App. 3d 472, 381 N.E.2d 307. Both *People v. Foster* and *People v. Wilkerson* are readily distinguishable from the case at bar. In *Foster*, the trial court submitted jury instructions regarding intoxication which deviated from the Illinois Pattern Jury Instructions to the degree that they incorrectly stated the law. Accordingly, the judgment was reversed and the cause was remanded for a new trial. In *Wilkerson*, the trial court failed to give separate instructions for each codefendant and incorrectly stated the self-defense instruction. The supreme court held that both deviations occurring in one case resulted in a confusing set of jury instructions. Therefore, the supreme court affirmed the appellate court's decision to reverse the convictions and to remand the cause for a new trial.

Although defendant's reliance on *People v. Richards* (1978), 64 Ill. App. 3d 472, 381 N.E.2d 307, is far more supportive of his position than *Foster* or *Wilkerson*, it is distinguishable on two important points. In *Richards*, defendant was convicted of indecent liberties with a child. At trial, the complainant stated that other instances of indecent liberties had occurred prior to the one charged. Defense counsel's objection was overruled. The trial court gave the following jury instruction:

"Evidence has been received that the defendant has been involved in crimes other than that charged in the information. This evidence has been received solely on the issue of the defendant's design. This evidence is to be considered by you only for the limited purpose for which it was received." 64 Ill. App. 3d at 474.

On appeal, the reviewing court found that the only purpose for introducing evidence of defendant's prior conduct to the jury was to establish his relationship and familiarity with the complainant, not to show the defendant's design. Thus, the reason for admitting evidence of prior conduct and the jury instruction were not in accord and the jury had been improperly instructed on a theory not supported by the evidence. Further, the reviewing court found that the evidence had not overwhelmingly established defendant's guilt beyond a reasonable doubt. Accordingly, the court found that the error in the jury instruction was not harmless and reversed defendant's conviction and remanded the cause for a new trial.

In the present case, IPI Criminal 2d No. 3.14 is very similar to the instruction given in *Richards*. The pivotal difference is that the *Richards* instruction stated that evidence was received solely to show "design," rather than to establish relationship and familiarity, which was the actual purpose for introducing the evidence. By contrast, the instruction used in the present case states that the evidence was received to show "intent and design," which was exactly the purpose for introducing the other crimes evidence at trial. A further point of distinction between *Richards* and the present case is that in *Richards*, the jury instruction error was found not to be harmless error because the evidence had not overwhelmingly established defendant's guilt beyond a reasonable doubt. In the present case, the evidence of defendant's guilt is overwhelming.

■ Accordingly, because IPI Criminal 2d No. 3.14 is in accord with the State's purpose for introducing evidence of the finger penetration act and defendant has failed to show how the instruction confused the jury or prejudiced him, we find that the trial court properly allowed IPI Criminal 2d No. 3.14 to be given.

With respect to defendant's contention that the prejudicial effect of the introduction of the other crimes evidence outweighed any probative value, defendant argues that the jury could reasonably have decided that since there was a previous charge, defendant must be guilty of the crime charged and that the other crimes evidence was not relevant to the offense charged and should have been excluded. In response, the State reiterates its position that evidence of the other

crime was properly admissible to show defendant's intent and design and to corroborate T.L.'s testimony.

We find *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 504 N.E.2d 1283, dispositive of this issue. In *Tannahill,* defendant was convicted on one count of aggravated criminal sexual abuse and two counts of indecent liberties against his 12-year-old daughter in connection with three separate incidents. At trial, complainant testified as to two other incidents which had been witnessed by her two brothers as well as continued incidents over a one-year period when her mother was not at home. On appeal, the reviewing court held that the trial court had properly admitted evidence of other sexual offenses between defendant and the complainant.

In reaching its decision, the *Tannahill* court stated that evidence of defendant's prior sexual offenses with the same child is admissible to show the relationship and familiarity of the parties, the intent with which the act was done, defendant's design or course of conduct, and to corroborate complainant's testimony as to the particular acts relied upon for conviction. The *Tannahill* court further stated:

"A father's sexual abuse of his daughter invariably involves more than one incident. Limiting complainant's testimony to one incident would make the incident appear isolated. This limitation would place an unfair strain upon the credibility of complainant's testimony concerning the charged offenses. Moreover, the probative value of such evidence far outweighs any prejudicial effect on defendant." 152 Ill. App. 3d at 887.

Defendant's reliance on *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E. 2d 489 (burglary), *People v. Copeland* (1978), 66 Ill. App. 3d 556, 384 N.E.2d 391 (armed robbery), and *People v. Siebert* (1979), 72 Ill. App. 3d 895, 390 N.E.2d 1322 (attempted murder and delivery of a controlled substance), is misplaced for the singular reason that these cases do not address sexual offenses against children, which offenses courts have consistently recognized present unique considerations. See *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 504 N.E.2d 1283.

For other reasons, defendant has also mistakenly relied on *People v. Esterline* (1987), 159 Ill. App. 3d 164, 512 N.E.2d 358. In *Esterline,* defendant was charged with the offense of indecent liberties with a child. Unlike our case, complainant was not related to defendant and the other crimes evidence sought to be admitted concerned alleged sexual acts defendant had had with children other than complainant. The *Esterline* court held that introduction of the other crimes showed only that defendant had a propensity for taking indecent liberties with children, which was not a valid ground for admissibility.

■ As stated, in the present case, the other crime sought to be introduced occurred between the same parties, in the same place, and within a few days of the crime charged. Further, the alleged incident occurred between a stepfather and his stepdaughter. Based on these facts, we find that the probative value of the other crimes evidence in the present case outweighs any prejudicial effect.

Next, defendant contends that the trial court erred when it: (1) allowed the State to query T.L.'s mother as to T.L.'s mental condition subsequent to the incidents; (2) did not allow defense counsel to cross-examine Officer O'Rourke as to the remainder of defendant's prior statement; (3) allowed Officer O'Rourke's testimony on rebuttal; and (4) failed to order T.L. to answer key questions on cross-examination. Defendant argues that these rulings were improper and confused the trier of fact and undermined any hope of a rational defense.

The first ruling concerns the following exchange which occurred during direct examination:

"[THE STATE]: And since this happened to her, has [T.L.] been different?

\* \* \*

[MOTHER]: She [sic] still the same, but not like she used to be.

[THE STATE]: What's different?

[MOTHER]: I can't talk to her like I used to.

\* \* \*

[THE STATE]: How is she emotionally?

[MOTHER]: She's okay.

[THE STATE]: But you can't talk to her, is that right?

[MOTHER]: Yes."

Defendant argues that T.L.'s mother's response to the State's query as to whether T.L. has been different since the incidents was irrelevant and prejudiced defendant by causing the jury to feel biased against him. In response, the State contends that the testimony concerning T.L.'s condition was properly admitted to rebut testimony that T.L. had told no one at school about the incident and had "originally denied" the incident to her mother. In our view, the record does not support the State's rationale. Prior to the testimony of T.L.'s mother, T.L. testified on cross-examination:

"Q. You never told anybody at school anything happened, is that correct?

A. No."

Contrary to the State's interpretation of the above exchange, the plain meaning of T.L.'s response to the query "Is that correct?" is that the

defense was incorrect in its belief that T.L. had never told anyone at school. There is no follow-up questioning on this matter to alter the plain meaning that T.L. denied never having told anyone at school about what had happened. Further, the State's contention that T.L. had "originally denied" the incident to her mother is more accurately described as T.L. "had hesitated" to tell her mother. During direct examination, T.L.'s mother described the initial conversation she had had with T.L. about what was bothering her. During that single conversation, T.L. hesitated at first, but when she was assured that she would not be punished, she told her mother about defendant's acts. Under the circumstances, T.L.'s embarrassment is readily understandable and we find no evidence of a demonstrated need to have her credibility restored by testimony as to her subsequent mental state.

Moreover, we find the State's reliance on *People v. Brown* (1982), 107 Ill. App. 3d 576, 437 N.E.2d 1240, misplaced. In *Brown*, the State elicited testimony from the victim of a sex offense that she had been receiving psychiatric treatment subsequent to the alleged incident. The reviewing court held that this testimony was properly elicited in light of defense counsel's false statement that the victim had been receiving psychiatric treatment prior to the incident. As stated by the *Brown* court, "Since the defense theory of the case was to discredit complainant as a mixed-up, fantasizing child, defense counsel was willing to have her former history of psychiatric treatment brought out." (107 Ill. App. 3d at 584.) This necessity for clarification is not present in the case at bar.

■ Although we find no reason for the State to have elicited testimony as to T.L.'s mental state after the incident other than to seek the jury's sympathy, we also find that any error was harmless in light of the content of T.L.'s mother's response. Although T.L.'s mother stated that she could not talk to T.L. like she used to, she also stated that T.L. was "okay" emotionally. In our view, these comments do not appear to rise to the level of inflaming the passions of the jury so as to cause prejudice to defendant.

Next, defendant argues that he was prejudiced by the trial court's refusal to allow defense counsel to elicit defendant's full statement from Officer O'Rourke, the State's rebuttal witness. During trial, Wilson Cooper, field supervisor for Burns Security, defendant's employer, testified on defendant's behalf that defendant had been working on Sunday, Monday and Tuesday (March 2, 3 and 4) from 4 p.m. until midnight. On rebuttal, Officer O'Rourke testified that on the day defendant had been arrested, he had told O'Rourke that during the first week of March 1986, he had been at home at night some of the time.

Prior to O'Rourke's testimony, during a conference outside the presence of the jury, the State told the trial court that it was going to ask O'Rourke questions regarding defendant's statement as to where he had been during the first week of March 1986 so as to rebut defendant's alibi testimony. The trial court allowed the question and the State asked only questions related to that matter. However, on cross-examination, defense counsel attempted to expand the scope of questions by asking O'Rourke whether defendant had denied allegations. The State objected and the objection was sustained.

■■ Although it is not clear from the briefs, defendant appears to be relying on the completeness doctrine in his attempt to claim reversible error for the trial court's refusal to allow him to further question O'Rourke regarding defendant's statement. The completeness doctrine permits a party to introduce the balance of an utterance or writing in order to explain, qualify or otherwise shed light on that portion of a statement introduced by an opponent. However, admission of evidence under this doctrine is limited to that which is relevant, material, and concerns the same subject at the same time. *People v. Pietryzk* (1987), 153 Ill. App. 3d 428, 505 N.E.2d 1228.

■■ In the present case, the testimony attempted to be elicited from O'Rourke by defense counsel did not concern the alibi testimony. Rather, it concerned defendant's denial of the allegations. Thus, it would not have been admissible under the completeness doctrine. Further, defendant's reliance on *People v. Hicks* (1963), 28 Ill. 2d 457, 192 N.E.2d 891, is misplaced on the ground that *Hicks* concerned impeachment testimony and defendant did not testify in the present case.

Next, defendant argues that due to the vagueness of the time frame questions, his alleged statement to O'Rourke was not sufficiently connected to the alibi defense to have been allowed as proper rebuttal testimony. This argument has no basis in the facts. Specifically, defendant claims that his alibi witness' reference to Sunday, March 2; Tuesday, March 3; and Wednesday, March 4 does not correlate to O'Rourke's testimony during rebuttal as to the "first week of March, 1986." Not only is this argument specious on its face even if supported by the facts, the record indicates that during direct, defense counsel specifically queried the alibi witness as to, "On the week of March—the first week of March of 1986, that week ending March 6, 1986, ***." Thus, the correlation between the time frame testified to by the alibi witness and that testified to by O'Rourke was firmly established.

As his last contention regarding alleged erroneous evidentiary rulings, defendant claims that the trial court's failure to order T.L. to an-

swer key questions denied him his right to confront his accuser. In response, the State argues that defendant did not object to the trial court's failure to force T.L. to answer questions at trial and, in the alternative, defendant has failed to show how T.L.'s failure to respond prejudiced him in any way.

■■ Pivotal to resolution of this issue is the distinction between defendant's contention that he was not given an "opportunity" to cross-examine T.L. and T.L.'s failure to respond to all of defense counsel's questions. Defendant does not allege that the trial court precluded defense counsel from asking T.L. questions. Therefore, the opportunity was always there. The fact that defense counsel was unable to capitalize on that opportunity does not amount to an erroneous evidentiary ruling. In that regard, *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708, and *People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201, relied upon by defendant, are distinguishable. In both *Barr* and *Strother*, defense counsel was denied the opportunity to ask specific questions.

Finally, defendant contends that the State failed to prove him guilty of aggravated criminal sexual assault beyond a reasonable doubt. Defendant argues that T.L.'s testimony was confusing, uncertain and improbable and, thus, did not satisfy the standard that when a sexual abuse conviction rests upon the complainant's testimony, that testimony must be clear and convincing or substantially corroborated. (*People v. Kolden* (1962), 25 Ill. 2d 327, 185 N.E.2d 170.) In support of his position, defendant relies extensively on T.L.'s inability to recall the exact dates of the occurrences, her failure to answer certain questions and the contradictions between T.L.'s testimony and the testimony of defense witnesses as to what T.L. had told them. In response, the State argues that T.L.'s testimony was clear and convincing and was substantially corroborated by other evidence.

■■ A conviction for aggravated criminal sexual assault, where the defendant denies the charge, will be upheld when the complainant's testimony is "clear and convincing" or it is corroborated by other evidence. Clear and convincing does not mean uncontradicted or unimpeached. (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376.) Rather, a complainant's testimony is considered clear and convincing if the story is consistent and discrepancies do not detract from its reasonableness. (*People v. Escobedo* (1987), 151 Ill. App. 3d 69, 502 N.E.2d 1263.) Minor contradictions or inconsistencies that occur go to the weight of the testimony and, therefore, are to be evaluated by the trier of fact. (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376; *People v. Escobedo* (1987), 151 Ill. App. 3d 69, 502 N.E.2d 1263.)

The trier of fact's determination as to the credibility of the complainant is to be accorded great weight (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376), and its finding of guilt will not be disturbed absent a showing that the evidence is so unsatisfactory as to warrant a reasonable doubt of guilt. *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 504 N.E.2d 1283.

■■ In the present case, defendant claims that T.L. told a different version of the events to the police officers, the doctor, the nurse and the detectives. In addition, defendant claims that T.L. testified to one event at trial, yet detailed three separate incidents in other versions. Although there is no question that T.L. was confused about the dates on which the various incidents took place and was confused about what she had told other witnesses seven months earlier, the discrepancies go solely to the degree or type of sexual activity. T.L. never wavered in alleging that defendant had sexually molested her. Further, defendant's own witnesses, Detective Sammie Lacey, Officer Clifford Doyle and Nurse Sylvia Lizcano, all testified that T.L had not given them any specific dates. Rather, any dates in their reports were surmised from the information given to them by T.L. and her mother. Thus, any discrepancy as to dates cannot be directly attributed to T.L. Moreover, the defense witnesses all testified that T.L. had been visibly upset and frightened when they had talked with her on March 5, 1986. Thus, her state of mind was clearly not at its most coherent. However, despite her frightened state, T.L. had always claimed that defendant had committed sexual acts on her. In view of the circumstances, we do not find that T.L.'s confusion on the witness stand renders her testimony so incredible as to require reversal of defendant's conviction. As previously stated, any inconsistencies go to the weight of the testimony and are to be resolved by the trier of fact. *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 504 N.E.2d 1283.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.