THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SUI WING ENG, Defendant-Appellant.

First District (4th Division)   No. 83—2153

Opinion filed November 14, 1985.

Howard Schaffner, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and Sharon Johnson Coleman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant, Sui Wing Eng, was convicted of one count of robbery, three counts of intimidation and three counts of unlawful restraint. Defendant was sentenced to the Illinois Department of Corrections for concurrent terms of four years for robbery, three years for each count of intimidation, and two years for each count of unlawful restraint. He now appeals, contending that reversible error was committed where: (1) a conflict between the indictment and the bill of particulars as to the date of the commission of the charged offenses prejudiced his case; (2) the trial court improperly allowed a gun and bullets into evidence; (3) the prosecution improperly impeached him with a prior inconsistent statement and then failed to proveup that statement; and (4) the State failed to prove him guilty beyond a reasonable doubt of robbery.

We affirm.

BACKGROUND

Defendant was charged by grand jury indictment with robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—1), theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(c)), unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3), and intimidation (Ill. Rev. Stat. 1979, ch. 38, par. 12—6) of the victims, Michael Ing, Parl Moy, and Wai Lau, on October 11, 1981.

Testimony adduced at trial disclosed that on October 9, 1981, defendant Sui Wing Eng (Eng), his friend, Steven Lee (Steven), and several other companions stopped Wai Lau (Wai) on the street in Chicago's Chinatown. Eng and his companions instructed Wai to contact Wai's friend, Michael Ing (Michael), and Michael's friend, Parl Moy (Parl), so that Eng could meet with the three of them (Wai, Michael and Parl) at the Three Happiness Restaurant on October 11, 1981.[1] The three later learned that the purpose of the meeting was to discuss Michael's relationship with Parl. Apparently Eng and his friends were angered at Parl's decision to date Michael rather than Eng's close friend, Steven Lee.

The three met Eng at the Three Happiness Restaurant in the early morning hours of October 11, 1981, as planned. Eng then informed them that Steven Lee was to attend the meeting, but that Steven was too ill to come to the restaurant. Eng suggested that the meeting take place at 3009 S. Emerald Street, at the apartment where Steven was staying. The three first refused to leave the Three Happiness Restaurant with Eng, but they changed their minds after Eng threatened them, saying, "We better clear this thing up today, or else you walk out the restaurant, I won't be responsible or do not blame me for anything that happens when you walk out the restaurant."

All three testified that when they arrived at 3009 S. Emerald Street, they were led to the apartment of Mina Lee (Mina). According to the three, their arrival brought to 10 the number of people gathered in the Mina apartment. This group included the three, defendant Eng, Steven, Mina, Gary Hau, Tak Chong Hau, Allen Moy, and Tim Moy. Michael and Wai were asked to talk to Steven, who was seated on the floor of a small unfurnished bedroom, while Parl was asked to leave the room. Eng and the six other people in the apartment stood by the open bedroom doorway.

Michael testified that Steven then began to question him about his

---

[1]Although the meeting actually took place in the early morning hours of Sunday, October 11, 1981, the time of the meeting is sometimes referred to in the record as "Saturday night."

whereabouts on a certain date. It was then that Michael realized that Steven was upset that Michael and Parl were dating each other. When Parl realized what Michael and Steven were talking about, she entered the bedroom and told Steven that she would date whomever she liked. Steven became enraged at hearing this and swung a bottle at Parl and Michael, hitting Parl on the wrist. Next, Eng and his companions entered the bedroom and for several minutes punched and kicked Michael and Wai.

After the beatings stopped, Eng instructed the three, Wai, Michael, and Parl, that if they wanted to leave alive, that Michael and Wai would have to receive three punches each from everyone in the apartment, and that the three would have to pay Eng $360 apiece. When Michael protested that they could not raise that amount of money at 3 in the morning, Eng asked Michael if he would like to leave one of his fingers or arms as a deposit. Michael and Wai were then lined up against the wall to receive their punches. Afterwards, Eng told Michael that he had 30 minutes to return with the money or he would find Parl and Wai in Lake Michigan.

Eng remained in the apartment with Parl and Wai while Michael went to get the money, accompanied by two of Eng's companions, Tim Moy and Gary Hau. Michael borrowed $1,200 in cash from a friend, Ken Moy (Ken), who owned the Four Happiness Restaurant. Ken testified that although Michael said that he needed the money badly, he did not say why he needed it. Ken also testified that he noticed a man who had followed Michael into the restaurant and who stood by the door until Michael left. Michael testified that he did not tell Ken why he needed the money because Gary Hau had cautioned him that "they had a couple of guns in the house."

When Michael returned with the $1,200, Eng counted it and gave it to Steven. He then warned the three that harm would come to them, their families and their friends if anyone found out about the incident.

Two months later, Officer Joseph Carone of the gang crimes division of the Chicago police department contacted Michael after receiving information about the incident. At first, Michael was reluctant to speak with Officer Carone, but on December 8, 1981, the three, Wai, Michael and Parl, met with Officer Carone and agreed to prosecute those who had allegedly victimized them. Defendant Eng was arrested on December 11, 1981. At the time of his arrest, Eng was lying in bed. On the night table next to Eng was a loaded revolver in plain view. The gun and bullets were confiscated by Officer Carone and over defense counsel's objection were later entered into evidence at

trial as "incidents of the arrest."

At trial, Eng testified that he and his companions were at 3009 South Emerald on the evening of October 10, 1981. However, Eng claims that he was there to help Mina move her belongings to another apartment. Eng, Mina, and Tak Chong Hau all testified that they were moving Mina's belongings between 7 and 11 o'clock that Saturday evening, and that during that period Wai, Michael, and Parl made a surprise visit but only stayed for 30 minutes.

After hearing the testimony of the three, Wai, Michael and Parl, Officer Carone, Ken, Eng and Eng's friends, the jury found Eng guilty of robbery, intimidation, and unlawful restraint. Eng was sentenced as previously stated herein. Eng's theft conviction was vacated by the trial court on August 10, 1983.

OPINION

I

■■ ■ Defendant contends that a two-week variance between the date of the crime stated in the bill of particulars and the date stated in the indictment prejudiced him in the preparation and presentation of this case. The State, in turn, correctly argues that Eng has waived his right to raise this issue on appeal by failing to include it in his post-trial motion. (*People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223, 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857-58.) Nevertheless, we will address this issue as it applies to the facts of this case.

> "It is generally held that a variance between the date of the crime specified in the bill of particulars and the date proved at trial does not constitute reversible error unless the date is an essential ingredient of the crime or relates to the running of the statute of limitations. [Citations.]" (*People v. Steele* (1984), 124 Ill. App. 3d 761, 766, 464 N.E.2d 788, 792.)

Moreover, the date specified in the bill of particulars does not necessarily preclude the State from offering proof at trial that the offense was in fact committed on a slightly different date, as it is the indictment, and not the bill of particulars, which is the charge upon which the defendant is tried. (124 Ill. App. 3d 761, 765, 464 N.E.2d 788, 792.) Some cases have taken exception to the general rule where the inconsistency is so substantial that it misled defendant in the preparation of his defense, or where an alibi defense has been used to counter the date or time specified in the bill of particulars. 124 Ill. App. 3d 761, 766, 464 N.E.2d 788, 792.

■ With respect to the crimes of robbery, unlawful restraint, and intimidation charged against Eng, the date of the crime is not an essential element of the charge. (Ill. Rev. Stat. 1979, ch. 38, pars. 18—1, 10—3, 12—6.) Additionally, there is no statute of limitations problem raised in this case. Thus, under the general rule, no reversible error has been established.

■ Eng argues that the variance has prejudiced him in preparation of his defense. (See *People v. Noll* (1982), 109 Ill. App. 3d 306, 308, 440 N.E.2d 335, 337.) We disagree. In the instant case, the correct date of the incident, October 11, 1981, was specified in the grand jury indictment, the grand jury transcript, and by the testimony of the three victims. Only the bill of particulars stated the incorrect date of October 25, 1981. At trial, defense counsel stated that he had not pleaded an alibi defense; rather, defense counsel suggested that the three victims could only testify as to the date specified in the bill of particulars. However, as the trial court noted, although the prosecution is required to prove that Eng committed the offenses charged on a specific date, the prosecution is not bound to prove that the offenses were committed on the particular date stated in the bill of particulars, or in the grand jury indictment. (See *People v. Neumann* (1979), 76 Ill. App. 3d 112, 394 N.E.2d 901.) Furthermore, it is clear from Eng's briefs that defense counsel was aware of the variance prior to the time of trial such that Eng was not misled in the preparation of his defense.

Consequently, under the circumstances of this case, we necessarily conclude that Eng was not substantially prejudiced by the variance between the date of the crime specified in the bill of particulars and the date stated in the grand jury indictment and proved at trial.

II

■ Eng also contends that the trial court erred by admitting into evidence a gun and bullets found on a night stand next to the bed in which he was sleeping at the time of his arrest, and that admission of the gun and bullets into evidence prejudiced his case. Eng maintains that the State failed to establish a sufficient connection between the weapon and ammunition and the crimes charged against him. The State, on the other hand, contends that the trial court properly admitted the gun and bullets as a detail of Eng's arrest.

In *People v. Washington* (1984), 127 Ill. App. 3d 365, 383, 468 N.E.2d 1285, 1298, this court recognized two lines of cases with regard to this issue. One line, cited by the State in this case, holds proper the admission of guns or other items of physical evidence

seized at defendant's arrest as relevant to the "details of the arrest." (See *People v. Kincy* (1982), 106 Ill. App. 3d 250, 435 N.E.2d 831; *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 320 N.E.2d 529; *People v. Moore* (1969), 42 Ill. 2d 73, 246 N.E.2d 299.) The other line of cases holds the items inadmissible because they have limited probative value, and serve only to prejudice the defendant. See *People v. Sanders* (1978), 59 Ill. App. 3d 650, 375 N.E.2d 921; *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528.

In the *Washington* case, this court held that a shotgun and two rifles were admissible even though no connection was established between the weapons and the crimes of murder, attempted murder, armed robbery, and aggravated battery charged against defendants. The court reasoned that:

> "Because the three defendants were arrested in each other's company shortly after the crimes, and one of the rifles was allegedly used to threaten the pursuing police, and the rifles were found with the handguns which were, according to defendants, those used at the shootings, we believe the three rifles were relevant to defendants' arrests which, here, were 'closely and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances ***' [Citation.]" 127 Ill. App. 3d 365, 383, 468 N.E.2d 1285, 1298.

In this case, Michael testified that, although he never saw Eng with a gun, he was warned by one of Eng's companions that there were guns in the apartment. Furthermore, Eng threatened the three victims upon their release, stating, "[B]efore you leave, I want you to be sure nobody else knows about this incident, especially the police, or else we are going to get you and your family, one way or the other." Although Eng was not arrested until nearly two months after he released the three victims, in our opinion, his felonious act of intimidation remained in effect at the very least until the time of his arrest. See Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a).

Consequently, we believe that the gun and bullets admitted into evidence were relevant to the details of Eng's arrest because this evidence related to the charge of intimidation brought against him. We find that the record evidences a sufficient connection between the physical evidence in question and Eng's criminal actions such that the gun and bullets were clearly and inextricably mixed up with the history of Eng's acts of intimidation. Therefore, we conclude it was not error for the trial court to allow them into evidence.

Even if we were to find that the gun and bullets were improperly

admitted into evidence in this case, we would find no substantial prejudice resulting to defendant given the overwhelming evidence of his guilt based on the testimony of the three victims.

## III

Eng also contends that he was improperly impeached at trial when the State questioned him about a prior inconsistent statement that he allegedly made. He claims the State erred by not first providing defense counsel with the statement. Furthermore, he asserts that he was prejudiced by the State's failure to perfect that alleged impeachment at trial.

The State correctly contends that Eng has waived these issues on appeal by: (1) failing to make a timely objection to the use of the prior inconsistent statement at trial; and (2) failing to include either of these claims in his written motion for new trial. We consider them here nevertheless.

At trial, on direct examination, Eng admitted that he saw the three victims at Mina's apartment on the night in question, but claimed that he was moving furniture in and out of the apartment during the time of their visit. On cross-examination, after laying a proper foundation, the prosecutor asked Eng if he had ever stated that he was watching television in the apartment that night. Defense counsel then objected, requesting a side bar conference and moving for a mistrial based on his assertion that he had not received a copy of the prior inconsistent statement before trial. The trial court overruled defense counsel's objection and denied his subsequent motion for mistrial. The State, however, did not use the statement further during the trial. Despite this, Eng contends that mention of the statement, and failure to perfect the alleged impeachment, created an inference that he was lying on cross-examination.

Even if we were to find that it was indeed error for the prosecutor to refer to Eng's prior inconsistent statement, we would not be compelled to reverse Eng's convictions and sentences in this case. Although Supreme Court Rule 412(a)(ii) makes it incumbent upon the State to provide defense counsel with the "substance of any oral statements made by the accused" (87 Ill. 2d R. 412(a)(ii)), a conviction will not be reversed for failure to provide the defense with information where such error is harmless. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) This rule holds true for a failure to prove impeachment as well. (*People v. Williams* (1969), 105 Ill. App. 2d 25, 245 N.E.2d 17.) We believe that the detailed testimony of the three victims in this case was sufficient proof that Eng was guilty beyond a

reasonable doubt of robbery, intimidation and unlawful restraint. Clearly, the one question posed to Eng, the substance of which he denied, could not have sufficiently prejudiced his case given the overwhelming evidence of his guilt.

Consequently, defendant was not substantially prejudiced by the State's limited use of the prior statement and its failure to proveup the alleged impeachment at trial. Accordingly, any error to this effect is deemed harmless under the circumstances of this case.

## IV

■ Finally, it is difficult to determine from Eng's briefs whether he contends that he was not proved guilty beyond a reasonable doubt only of the charge of robbery, or if this issue relates to all of the charges brought against him in this case. Regardless, Eng has also waived this issue on review by failing to raise it in his written post-trial motion. (*People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223, 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857-58.) Nevertheless, we will discuss the issue as it applies to this case.

■ ■ The record in the instant case establishes that Eng was convicted by a jury for robbery, unlawful restraint, and intimidation beyond a reasonable doubt.[2] It is basic that this court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. (*People v. Agee* (1981), 100 Ill. App. 3d 878, 427 N.E.2d 244.) A jury's verdict of guilt will not be disturbed unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt as to defendant's guilt. *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346.

■ Without vainly reiterating all of the evidence presented at trial, the record reveals that the jury was justified in finding defendant guilty beyond a reasonable doubt of robbery, unlawful restraint and intimidation. The three victims in this case all delivered detailed and positive accounts of what happened at 3009 South Emerald Street in the early morning hours of October 11, 1981. The three victims stated that after they arrived at the Emerald Street address, they were detained against their wills by Eng's violent threats and physical abuse. (See Ill. Rev. Stat. 1979, ch. 38, par. 10—3.) Their testimony also revealed that Michael and Wai were punched and kicked

---

[2]The jury entered a verdict of guilty on the theft charge as well. However, Eng's theft conviction was later vacated by the trial court.

by several persons as Parl watched, and that Michael paid Eng $1,200 for their release after being threatened with dismemberment, and threatened that Parl and Wai would be killed if he did not come up with the money. (See Ill. Rev. Stat. 1979, ch. 38, pars. 12—6, 18—1.) Further, upon their release, Eng threatened the three victims that if they went to the police that Eng and his companions would cause harm to them, their families and their friends. (See Ill. Rev. Stat. 1979, ch. 38, par. 12—6.) The only conflicting testimony came from defendant Eng and two other witnesses that Eng was busy moving furniture at a friend's apartment on the night in question.

Clearly, the jury weighed the conflicting testimony in this case in favor of the three victims. The record does not evidence that the jury's conclusion was at all unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt as to Eng's guilt. We will not substitute our judgment for that of the trier of fact, and defendant Eng's convictions and appurtenant sentences must be affirmed.

Affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

The admission into evidence of the gun and bullets found in the nightstand next to the bed in which the defendant was sleeping at the time of his arrest was improper, in my opinion, because it was not relevant. In addition, I do not believe that the admission of the evidence can be denominated as harmless. Consequently, I respectfully dissent.

All relevant evidence is admissible unless there is a particular reason to exclude it. (*People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 139 N.E.2d 780; *People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1; Cleary & Graham's Handbook of Illinois Evidence sec. 402.1 (4th ed. 1984).) " ' "Relevant evidence" means evidence having any tendency to make the existence of any fact, that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " (*People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295, citing Rule 401 of the Federal Rules of Evidence, 65 F.R.D. 131, 142.) At no point in the proceedings of this case was there a suggestion that a gun was used in the commission of the offense. Therefore, I do not believe that the gun is relevant. The State does not argue that it is relevant, rather it argues that the gun is a circumstance of the arrest and therefore admissible.

The notion that a gun is admissible evidence because it is a circumstance of the arrest has been frequently stated. As to this argument, the State correctly relies on *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 320 N.E.2d 529. However, based on the following, I believe *Longstreet* was incorrectly decided. The defendant there was arrested sometime after the occurrence. The actual weapon used in the offense and a second weapon were discovered at the head of the defendant's bed during the search of the defendant's apartment. The weapon used in the offense was admitted, but the defendant objected to the admission of the second weapon. The trial court admitted the second weapon, and in affirming that admission on appeal the court cited the supreme court opinion in *People v. Jackson* (1956), 9 Ill. 2d 484, 138 N.E.2d 528, in which the court stated that "[i]t has long been the rule that 'even though no claim is made that the accused used [the particular] weapon in committing the particular crime, the weapon may be subject of testimony concerning the details of the arrest and also be admitted into evidence.'" *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 882, 320 N.E.2d 529, 534, citing *People v. Jackson* (1956), 9 Ill. 2d 484, 492, 138 N.E.2d 528, 532 (citations and emphasis omitted).

In support of this proposition, the court in *Jackson* cited *People v. Dale* (1934), 355 Ill. 330, 189 N.E.2d 269, *People v. Lenhardt* (1930), 340 Ill. 538, 173 N.E. 155, and *People v. Durkin* (1928), 330 Ill. 394, 161 N.E. 739. Considering these cases and subsequent cases, I believe the rule of law has been overstated.

One of the supreme court cases cited, *Durkin*, involved the murder with a revolver of a special agent of the Department of Justice. The question concerned the admissibility of two pistols taken from the defendant when he was arrested three months later. The supreme court briefly considered the issue and held that the testimony concerning what was found in the defendant's possession, along with the conversation with the defendant at that same time, were "competent as evidence of the details of the arrest." *People v. Durkin* (1928), 330 Ill. 394, 406, 161 N.E. 739, 744.

Four years later, in *Lenhardt*, the victim was also murdered with a revolver. The defendant was arrested some months later. When arrested he had a revolver in his possession. The defendant argued that there was no showing that he used it in committing the crime charged. The court in approving its admission commented that "[i]t is competent to prove that an accused person, when arrested, possessed a weapon suitable for the commission of the crime charged against him, even though no claim is made that he actually used it in commit-

ting the particular crime." *People v. Lenhardt* (1930), 340 Ill. 538, 549, 173 N.E. 155, 159.) Two years later the supreme court made a similar comment in *People v. Dale* (1934), 355 Ill. 330, 189 N.E. 269.

In *People v. Smith* (1952), 413 Ill. 218, 108 N.E.2d 596, the victim was murdered with a revolver. Admitted into evidence were two sawed-off shotguns found in the trunk of the car in which the defendant was arrested six months after the offense. The supreme court reversed the trial court's admission of that evidence based on the fact that there was no showing that the defendant had possession of the guns or that they were under his control. Possession is not an issue in the instant case, but *Smith* is significant because of the following case. In *People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112, a gun was found in an automobile in which the defendant was riding when arrested eight days after the commission of the crime. A witness testified that it was similar to and looked like the revolver that was in the defendant's hands at the time of the shooting. The court identified the problem as being one of relevance. The court explained that a gun is relevant if there is evidence to connect it with the defendant and the crime. The court then commented on the *Smith* case and noted that in *Smith* it had held that under the circumstances there the admission of the gun was reversible error. The *Jones* court pointed out that in *Smith* the opinion revolved around possession. The court said "[h]owever, the real basis for the [*Smith*] decision was not the question of possession. Even if the shotguns had been in the defendant's lap instead of in the trunk of the car, they would still not have been relevant, since all of the evidence indicated that the crime had been committed with a gun of an entirely different type." (*People v. Jones* (1961), 22 Ill. 2d 592, 600, 177 N.E.2d 112, 116.) The court further commented that "[t]hus the question is not whether the gun was in the possession of the defendant, but rather whether the gun had been sufficiently connected with the crime and the defendant to make it relevant evidence." *People v. Jones* (1961), 22 Ill. 2d 592, 600, 177 N.E.2d 112, 116.

In the instant case there is no suggestion that the gun is connected to the crime. Consequently, there is no relevance to the admission of the gun. As in *Smith* and *Jones*, the admission of the gun is error. The broad proposition that guns generally are admissible as evidence surrounding the arrest is not supported by the rationale in the recent Illinois Supreme Court cases of *Smith* and *Jones*. The supreme court has clearly stated that the evidence must meet the test of relevancy.