THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DENNIS HARRIS, Defendant-Appellant.

Fifth District   No. 5—90—0480

Opinion filed July 30, 1992.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HENRY LEWIS delivered the opinion of the court:

A jury found the defendant, Dennis Harris, guilty of first-degree murder, armed robbery, and armed violence. Post trial the trial court vacated the judgments of guilt with respect to those counts pertaining to armed robbery and armed violence. After determining that the death penalty should not be imposed, the trial court sentenced the defendant to a term of imprisonment of 75 years. The defendant appeals, presenting two issues for our review: whether his right to an impartial jury was violated and whether the trial court abused its discretion in imposing sentence.

Concerning the first issue he raises for review, defendant contends that his right to an impartial jury was violated because the trial court improperly refused to excuse potential juror George O'Neill for cause, thereby forcing defendant ultimately to exhaust his peremptory challenges and, thus, to accept the twelfth juror to be seated, juror George Holt, although Mr. Holt was, in the words of the defendant, "acquainted with law enforcement officials."

The right to a jury trial guarantees to one accused of a crime a fair trial by a panel of impartial jurors, and the failure to accord an accused a fair hearing violates even the minimal standards of due process. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) The right to a trial by an impartial tribunal is so basic that a violation of the right requires a reversal. (*Cole*, 54 Ill. 2d 401, 298 N.E.2d 705.) This issue cannot be disposed of by the harmless-error rule. (*Cole*, 54 Ill. 2d 401, 298 N.E.2d 705.) Peremptory challenges are not of constitutional dimension but are, rather, creatures of State law, and a State may determine their number, their purpose, and the manner of their exercise. (*Ross v. Oklahoma* (1988), 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273; *People v. Gleash* (1991), 209 Ill. App. 3d 598, 568 N.E.2d 348.) The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. (*Ross*, 487

U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273.) Peremptory challenges are a means to achieve the end of an impartial jury. (*Ross*, 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273.) As long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the sixth amendment was violated. *Ross*, 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273.

The purpose of examination upon *voir dire* is to filter out prospective jurors who are unable or unwilling to be impartial. (*People v. Johnson* (1991), 215 Ill. App. 3d 713, 575 N.E.2d 1247.) A person is not competent to sit as a juror if his state of mind is such that a party will not receive a fair and impartial trial with him as a member of the jury. (*Cole*, 54 Ill. 2d 401, 298 N.E.2d 705.) In *voir dire* the trial judge is afforded broad discretion (*People v. Johnson* (1987), 162 Ill. App. 3d 952, 516 N.E.2d 343), and reversal of a conviction will not occur unless there has been an abuse of discretion that denies a defendant an impartial trial (*Gleash*, 209 Ill. App. 3d 598, 568 N.E.2d 348). Moreover, the trial court's determination of whether prospective jurors would be fair and impartial should not be set aside unless that determination was contrary to the manifest weight of the evidence. *Gleash*, 209 Ill. App. 3d 598, 568 N.E.2d 348.

In the instant case, as we have indicated, the trial court denied the defendant's motion to excuse potential juror George O'Neill for cause, whereupon the defendant removed him by the use of a peremptory challenge. Later, after the defendant had used his last peremptory challenge and had moved unsuccessfully for additional peremptory challenges, George Holt was examined as a potential juror. When the court asked Mr. Holt, "Do you have any close friends or relatives employed by a police agency?" Mr. Holt answered, "Friends." Asked further by the court, "Would that cause you to put greater or less weight on the testimony of a police officer, if one testifies?" Mr. Holt responded, "No." Asked by the court, "Will you treat the testimony of a police officer by the same standards as you would any other witness in this case?" Mr. Holt answered, "Yes." Later the defense inquired of Mr. Holt, "[Y]ou have indicated that you had some friends who were police officers. And who might they be?" Mr. Holt responded, "Just friends of mine in Carbondale, Shiplett, and Reno, couple of the guys over there. That's all." Asked further by the defense, "And have you ever talked about this case, to your recollection, or Mr. Harris in any way with either Jerry Reno or Chuck Shiplett, or any of the others?" Mr. Holt answered, "No, no."

The defense subsequently asked the court to remove Mr. Holt for cause, stating:

"Your Honor, I think that Mr. Holt's familiarity with members of the police force, including Police Lieutenant Reno, is a problem which may prejudice Mr. Holt against my client, and I would ask that the Court remove Mr. Holt for cause or that in the alternative I be granted an additional peremptory challenge based on the Court's earlier rulings to remove Mr. Holt."

The court ruled that "[c]ause definitely has not been established, and the Court's [*sic*] previously ruled on your request for additional peremptory challenges." The court earlier had also denied defendant's motion to reconsider its refusal to remove George O'Neill for cause. We note parenthetically that neither Officer Shiplett nor Officer Reno testified at the defendant's trial.

In his brief defendant asserts that he "was forced to accept George Holt, who was well-acquainted with several police officers, including an officer who was a State's witness, as a juror. Thus, this Court must reverse Mr. Harris' conviction and remand this cause for a new trial." Defendant does not name this witness. In his reply brief he states that Mr. Holt was acquainted with police officers who were "potential State's witnesses." Defendant urges that George Holt "would likely be biased in favor of law enforcement officials," maintaining that the trial court's refusal to excuse George O'Neill for cause prejudiced him, thereby depriving him of a fair trial.

■ The defendant discusses in detail George O'Neill's responses during *voir dire* in an effort to show that the trial court erred in refusing to excuse Mr. O'Neill for cause. However, because reversible error "results not from the defendant's exhaustion of his peremptory challenges, but rather from the end result of an unfair jury" (*Gleash*, 209 Ill. App. 3d at 607, 568 N.E.2d at 354; see *Ross*, 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273), we look to the composition of the jury that was actually impaneled and that returned the verdict of guilt. The defendant voices no objection concerning the competence of any juror seated other than George Holt. We have examined all of the questions posed to Mr. Holt and the answers he gave during *voir dire*. In light of the trial court's opportunity to evaluate Mr. Holt's responses and to assess his candor (see *Johnson*, 162 Ill. App. 3d 952, 516 N.E.2d 343), as well as the nature of his responses as revealed by the record, we conclude that the trial court's determination that George Holt would be fair and impartial was not contrary to the manifest weight of the evidence. The trial court did not abuse its discretion in refusing to excuse George Holt for cause, and, contrary to defendant's assertions, it cannot be said that he was denied the right to trial by an impartial tribunal.

With respect to the other issue the defendant raises for review, he contends that the trial court abused its discretion in sentencing him to 75 years' imprisonment because he had not intended to kill the victim, because he has significant rehabilitative potential, and because the trial court considered an improper aggravating factor, namely, deterrence of others. He asks us to reduce his sentence to 35 years' imprisonment or to vacate the sentence and to remand the cause to the trial court for resentencing.

The defendant killed the victim, Jason Jackson, in the course of an armed robbery of four employees of Jeremiah's Restaurant in Carbondale as they walked to a nearby bank to deposit the restaurant's receipts at about 2:30 a.m. on October 14, 1989. When the defendant fled on foot immediately after taking the deposit bags from the employees, the victim ran after him, mistakenly believing the defendant's weapon was a cap gun. When the defendant fell while running from the scene, the victim overtook him. The defendant shot him at close range three times in rapid succession, one bullet penetrating his heart. The 21-year-old victim died almost immediately.

In imposing sentence in this case, the trial court concluded that there were no statutory factors present in mitigation and that there were two factors present in aggravation: the defendant has a history of prior delinquency or criminal activity and the sentence is necessary to deter others from committing the same crime. (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) In pronouncing . sentence, the court expressed the belief that the defendant is eligible for an extended-term sentence on the basis of "the aggravating factors in this case and the evidence in this case, the prior record of this Defendant, and the Court's independent assessment of all of these elements." Present as a factor in aggravation with respect to the imposition of an extended term, pursuant to section 5—8—2 (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2), was the defendant's prior conviction for the offense of residential burglary within 10 years of the instant conviction. As we have said, the trial court sentenced the defendant to confinement for a term of 75 years.

The imposing of punishment is one of the most important and sensitive of judicial responsibilities, and we, as a reviewing court, must give great weight to the judgment of the trial court. (*People v. Generally* (1988), 170 Ill. App. 3d 668, 525 N.E.2d 106.) Its decision concerning sentencing is entitled to great deference. (*People v. Plantinga* (1985), 132 Ill. App. 3d 512, 477 N.E.2d 1299.) The imposition of a sentence is a matter of judicial discretion, and absent an abuse of this discretion, the sentence of the trial court may not be altered upon re-

view. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Section 5—5—3.2(a)(7) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(a)(7)) provides that deterrence of others is a factor to be accorded weight in favor of imposing a term of imprisonment. (*People v. Simmons* (1985), 138 Ill. App. 3d 492, 485 N.E.2d 1135.) In the exercise of its discretion a court may logically give reasonable consideration to the need for deterrence as a factor in the imposition of a sentence. (*People v. Cameron* (1989), 189 Ill. App. 3d 998, 546 N.E.2d 259.) Deterrence, punishment, the nature of the crime, and the protection of the public are to be considered equally with the rehabilitation of the offender in the fixing of sentences. *Generally*, 170 Ill. App. 3d 668, 525 N.E.2d 106.

■ In the instant case, Mary Ellen Hall, a rehabilitation specialist, testified on defendant's behalf that, after visiting him twice, she had indicated in the conclusion of her report that she felt he has

> " 'excellent potential to benefit from rehabilitation services. He needs one-on-one assistance in identifying a vocational objective. Test results indicate once a vocational objective has been identified, training should be feasible to pursue in his chosen area, especially areas of mechanical orientation. It should also be indicated vocational options take into consideration the apparent attention span deficit noted during testing as well as vocational interviews.' "

On cross-examination the witness was asked, "And in fact, you indicated to me, didn't you, that in your opinion that Mr. Harris displayed excellent potential to benefit from rehabilitation services, and you indicated to me, didn't you, that's the standard answer every rehabilitation specialist gives because you're optimistic people; isn't that right?" The witness answered that she could not speak for every rehabilitation professional but that "that's what I would give." Also testifying on defendant's behalf was Dr. James Bordieri, an associate professor at the Rehabilitation Institute at Southern Illinois University, who had seen the defendant on three occasions. On the basis of test results, the witness found the defendant to be in the low range of average intelligence. He stated that the defendant had developed skills as a short-order cook and in keeping records or doing inventory. The witness expressed the opinion that "these skills would allow him future rehabilitation potential."

The defendant argues that the trial court ignored "an important mitigating factor," that he had not intended to kill the victim. While there is nothing in the record to suggest that when the defendant planned the armed robbery he intended to kill anyone, there is evi-

dence that he shot the victim in the belief that the victim could identify him because a cloth concealing defendant's nose and mouth during the robbery had fallen.

Although the defendant was but 23 years of age at the time he committed this offense, he had by that time already engaged in extensive criminal conduct and was on mandatory supervised release, or parole, with respect to sentences for residential burglary, aggravated unlawful restraint, and unlawful delivery of a controlled substance. Defendant had entered a plea of guilty to all of those offenses in April of 1986.

As was said in *Perruquet*:

"[T]he trial judge is normally in a better position to determine the punishment to be imposed than the courts of review. [Citations.] A reasoned judgment as to the proper sentence to be imposed *** depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citation.] The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors 'which is superior to that afforded by the cold record in this court.'[Citation.]" (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.)

Recognizing the great deference to which the decision of the trial court is entitled and considering all of the circumstances reflected by the record here, we cannot say that the trial court abused its discretion in imposing this sentence. Despite the defendant's assertions to the contrary, it was not error for the trial court to consider deterrence of others as an aggravating factor. Nor does the record indicate that the rehabilitation of the defendant was not given appropriate consideration together with other elements to be considered in the fixing of a sentence. Further, whatever the defendant's intent may have been concerning the victim, the record here is such that, even if he did not intend to kill Jason Jackson, the court did not abuse its discretion in the imposition of sentence.

Affirmed.

GOLDENHERSH, P.J., and CHAPMAN, J., concur.