No. 2-08-0701     Filed: 9-9-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 00--CF--1381 |
| JASON N. STRAWBRIDGE, | ) ) | Honorable John R. Truitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the opinion of the court:

Defendant, Jason N. Strawbridge, was convicted of four counts of predatory criminal sexual assault of a child (720 ILCS 5/12--14.1(a) (West 2000)) and one count of aggravated stalking (720 ILCS 5/12--7.4(a)(3) (West 2000)), following a jury trial in the circuit court of Winnebago County. He was sentenced to 12 years' imprisonment on each of the predatory criminal sexual assault counts (subject to the truth-in-sentencing statute (730 ILCS 5/3--6--3 (West 2008))) and 2 years' imprisonment on the stalking count. All sentences run consecutively. Defendant now appeals, raising a number of issues. He first argues that one of his convictions of predatory criminal sexual assault must be vacated in accordance with one-act, one-crime principles. Second, defendant contends that he was not proven guilty of aggravated stalking. Third, he complains of the trial court's refusal to discharge a juror who was acquainted with the victim. Fourth, defendant alleges error in the trial

court's decision to permit the State to introduce certain pornographic pictures into evidence. Fifth, he asserts that the sentences for two of his convictions of predatory criminal sexual assault must be reduced to nine years, as he had previously been sentenced on these counts before this court vacated an earlier guilty plea. We agree with defendant's first and fifth contentions; therefore, we vacate his conviction on the first count of predatory criminal sexual assault, reduce his sentence to nine years' imprisonment on the second count, and otherwise affirm the judgment of the trial court. As the issues raised by defendant are largely discrete, we will not set forth in detail the evidence presented at trial and will instead discuss it as it pertains to defendant's arguments.

## I. ONE ACT, ONE CRIME

Defendant's first contention is that one of his convictions must be vacated pursuant to one-act, one-crime principles. This issue presents a question of law subject to de novo review. Village of Sugar Grove v. Rich, 347 Ill. App. 3d 689, 698 (2004). The one-act, one-crime rule holds that multiple offenses may not be "carved from the same physical act." People v. King, 66 Ill. 2d 551, 566 (1977). Defendant argues that the indictments, jury instructions, and verdict forms for counts I and II differed only in the time periods specified in them. Both counts alleged that defendant "placed his penis in the vagina of" the victim. Count I alleged conduct occurring between June 24, 1999, and March 20, 2000. Count II was based on conduct alleged to have occurred on or about March 20, 2000. Thus, defendant points out, the jury could have found that the State had proved one instance of such conduct, but convicted on both counts.

Before proceeding further, we note that defendant concedes that this issue was not properly preserved for review. He asks that we reach the merits under the plain-error rule. See 134 Ill. 2d R. 615(a). The plain-error rule permits a court of review to reach an unpreserved error where the

evidence is closely balanced or where the error is of such a substantial nature that it implicates the integrity of the judicial process. People v. Piatkowski, 225 Ill. 2d 551, 565 (2007). We have little trouble concluding that an error that results in an improper conviction and leads to a 12-year sentence of imprisonment (actually 9, as we discuss later) is of sufficient magnitude to warrant plain-error review. In People v. Harvey, 211 Ill. 2d 368, 369 (2004), our supreme court held that "an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule." We will therefore reach the merits of defendant's claim here.

Regarding the merits, we find the case of People v. Wasson, 175 Ill. App. 3d 851 (1988), to be of considerable guidance in resolving this issue. In that case, the defendant was charged with and convicted of committing aggravated criminal sexual assault between January 1, 1983, and April 24, 1985. Wasson, 175 Ill. App. 3d at 853. The statutory provision under which the defendant was charged, however, became effective on July 1, 1984. Wasson, 175 Ill. App. 3d at 854. The reviewing court determined that, absent a limiting instruction stating that the defendant could not be convicted of conduct occurring before July 1, 1984, "it [was] impossible to know whether the jury instead convicted defendant for an act performed, as alleged in the complaint, during the period which predated the statute under which he was charged." Wasson, 175 Ill. App. 3d at 859-60. As "the information charged defendant for an offense which could have occurred before the corresponding statute was legally operative, [the Wasson court found] it necessary to invalidate the entire charging instrument and the resulting conviction." Wasson, 175 Ill. App. 3d at 860.

Similarly, in this case, it is impossible to determine whether the jury found that there was one instance of penile to vaginal contact and yet found defendant guilty with regard to both counts

because that instance of conduct took place between June 24, 1999, and March 20, 2000, but also happened to occur on or about March 20, 2000, or if it determined that there were multiple instances of such conduct. We further note that the Wasson court relied in part upon the fact that there was "conflicting testimony as to when the offense was committed" (Wasson, 175 Ill. App. 3d at 860), while in this case, the victim testified to an act of intercourse occurring on March 17, 2000, which is within the time periods described in both counts. The State points out that there is adequate evidence in the record to support convictions on multiple counts. We do not disagree; however, it is not our prerogative to place ourselves in the position of the jurors and try to determine how they arrived at their verdict. The problem here is that we cannot tell what the jury based its verdict on, and it is that verdict that is challenged on appeal. It is, after all, the jury that must convict the defendant. See People v. Walker, 392 Ill. App. 3d 277, 296 (2009). As we cannot say that multiple offenses (and here, multiple convictions) have not been "carved from the same physical act," both of defendant's convictions on counts I and II cannot stand. See King, 66 Ill. 2d at 566. We therefore vacate defendant's conviction on the first count of the indictment.

## II. AGGRAVATED STALKING--PROOF BEYOND A REASONABLE DOUBT

Defendant next contends that he was not proven guilty of aggravated stalking. This offense-- as defendant was charged with it--required that the State prove he committed stalking and, in the course of so doing, violated an order of protection. See 720 ILCS 5/12--7.4(a)(3) (West 2000). To prove stalking, as alleged, the State had to prove that defendant placed the victim under surveillance on at least two occasions and placed her in reasonable apprehension of future confinement or restraint. See 720 ILCS 5/12--7.3 (West 2000). The stalking statute defines placing a person under surveillance as "(1) remaining present outside the person's school, place of employment, vehicle, other

place occupied by the person, or residence other than the residence of the defendant." 720 ILCS 5/12--7.3(d) (West 2000). It has been held that the requirement that a defendant "remain[] present outside" does not mean that the defendant must "stop, stay or wait for a set period of time." People v. Curtis, 354 Ill. App. 3d 312, 318 (2004). Defendant cites a number of cases where this element was satisfied when a defendant actually did remain present for a more extended period of time. See, e.g., People v. Sowewimo, 276 Ill. App. 3d 330, 341-42 (1995). We do not read such cases as establishing as a matter of law a minimum period that a defendant must place a victim under surveillance. Additionally, we use an objective standard to determine whether a victim is placed in "reasonable apprehension of future confinement or restraint." People v. Nakajima, 294 Ill. App. 3d 809, 820 (1998) (making irrelevant defendant's claim that the victim did not testify that she was actually afraid of defendant in this case). Any history between a defendant and a victim may be relevant to assessing whether a reasonable person in the victim's position would be in apprehension of future confinement or restraint. See People v. Holt, 271 Ill. App. 3d 1016, 1025 (1995). Thus, the State was required to prove that, on at least two occasions, after an order of protection was in place, defendant placed the victim under surveillance by remaining present outside a place occupied by the victim, thereby placing her in reasonable apprehension of future confinement or restraint.

When faced with a challenge to the sufficiency of the evidence to sustain a conviction, a court of review must determine whether the evidence, construed in the light most favorable to the State, would allow any rational trier of fact to find beyond a reasonable doubt the essential elements of the crime charged. People v. Wheeler, 226 Ill. 2d 92, 114 (2007). All reasonable inferences must be drawn in the State's favor. People v. Williams, 376 Ill. App. 3d 875, 883 (2007). It is not our role to retry a defendant. People v. Smith, 185 Ill. 2d 532, 541 (1999). Further, the trier of fact was in

the best position to assess the credibility of witnesses, as it was able to actually hear them testify. Smith, 185 Ill. 2d at 541-42. A conviction will be reversed only if "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." Wheeler, 226 Ill. 2d at 115.

It is undisputed that defendant was served with a temporary order of protection on April 27, 2000, and a permanent one on May 10, 2000. Thus, the State had to prove conduct occurring after April 27, 2000. It is, however, also true that the State "is not bound to prove that the offenses were committed on the particular date stated in the bill of particulars, or in the grand jury indictment." People v. Sui Wing Eng, 138 Ill. App. 3d 281, 287 (1985). In this case, we find the following testimony by the victim sufficient to sustain defendant's conviction of aggravated stalking:

"Q. [State's Attorney:] After [defendant] was asked to leave the house in March of 2000, do you know if the police were ever called because of him being at the school or near your home?

A. After I saw him up there and an order of protection was taken out, I was told by my mom and Pat that if I saw him up there, to go and tell the gym teacher. I don't know if something was done outside of that[,] me personally, I'm not aware of the police being called, because whenever I would go toward the gym teacher he would take off."

This testimony, construed in the light most favorable to the State, obviously refers to more than one instance that occurred after the order of protection was in place. Further, it is also apparent that defendant had remained present for a time, since he would not leave until the victim moved toward the gym teacher. Moreover, it is also clear that the victim was aware of defendant's presence since it caused her to move toward the gym teacher. Finally, under the totality of the facts and

circumstances, a reasonable person in the victim's position would be in reasonable apprehension of future confinement or restraint. Given the long history of sexual abuse inflicted upon the victim by defendant, the jury could certainly conclude that a reasonable person who was then placed under surveillance by such an abuser would be placed in apprehension of future confinement or restraint. Accordingly, construing the record in the light most favorable to the State, we hold that the State presented sufficient evidence to sustain defendant's conviction for aggravated stalking

### III. THE ALLEGEDLY BIASED JUROR

Defendant also argues that the trial court erred by refusing to remove a juror who was an acquaintance of the victim. A defendant has a fundamental right to an open-minded and unbiased trier of fact. People v. Harris, 384 Ill. App. 3d 551, 560 (2008). Generally, a person is not competent to sit as a juror if his or her state of mind is such that a party will be denied a fair trial. People v. Cole, 54 Ill. 2d 401, 413 (1973). The mere suspicion that a juror is biased is insufficient to warrant disqualifying a juror. People v. Collins, 106 Ill. 2d 237, 274 (1985). The question of whether a particular juror is impartial is for the trial court to answer in the first instance, and we will disturb such a determination only if it is contrary to the manifest weight of the evidence. People v. Harris, 231 Ill. App. 3d 876, 878 (1992). The ultimate decision of whether to replace a juror is a matter within the discretion of the trial court, and it will be disturbed only if that discretion is abused. People v. Hines, 165 Ill. App. 3d 289, 298 (1988).

During a break in her direct testimony, the victim indicated that she knew one of the jurors, Angela LaFew. The victim told the court that she was in a church youth group with LaFew, but that the victim was with the middle-school group and LaFew was with the high-school group. She had not seen LaFew for four or five months. The victim stated that she would say "hi" if they passed each

other. She met LaFew within the year preceding the trial. She further stated, "I haven't--we've never actually met, I just know what her name is." The victim did not recall ever seeing LaFew prior to the previous summer. In total, they had seen each other two or three times.

At the conclusion of the victim's testimony, the court questioned LaFew outside the presence of the other jurors. LaFew acknowledged that she recognized the victim when the victim testified. She knew the victim from church. She stated, however, that she did not know the victim "very well." She had not recognized the victim's name (the victim had changed her last name, and LaFew did know the former name). They never socialized or interacted at school. Primarily, according to LaFew, they interacted at church. LaFew said that the interaction consisted of having "seen her there and chatted with her for a second." LaFew and the victim shared a mutual friend so they would "stop and say hey to each other." The trial court then asked whether the fact that she knew the victim would affect LaFew's ability to be impartial, and LaFew responded negatively. She further indicated that she would give the victim's testimony neither more nor less weight and that she could judge the victim's credibility the same way that she would judge the testimony of anyone else. LaFew answered affirmatively when asked if she could be fair. LaFew also stated that she and the victim were "not close" and that she had never discussed the victim's "situation" with anyone. LaFew had seen the victim at church "maybe three times at best."

Defense counsel asked that LaFew be removed from the jury, indicating that if he had been aware of the relationship between the victim and LaFew, he would "probably" have moved to strike her. The trial court declined that request. It first noted that there was no deceit involved during voir dire. It further noted that the victim's and LaFew's accounts of their interactions were consistent, including their statements about the number of times they had seen each other. It noted that LaFew

did not even know the victim's last name. The trial court also credited LaFew's assurances that she could remain impartial and properly evaluate the victim's testimony. We cannot say that the finding of impartiality is contrary to the manifest weight of the evidence or that the decision to keep LaFew was an abuse of discretion.

We find considerable guidance for the resolution of this issue in the supreme court's opinion in People v. Porter, 111 Ill. 2d 386 (1986). In that case, a juror attended the same church as the mother of the victim. The juror stated that she did not realize this until after " 'it had gotten started and everything was going on.' " Porter, 111 Ill. 2d at 398. The trial court questioned the juror after the trial had concluded. The juror stated that the fact that she and the victim's mother attended the same church " 'didn't make any difference to' " her. Porter, 111 Ill. 2d at 397. The trial court denied a subsequent motion for a mistrial. The supreme court noted that all the record showed was that the juror and the victim's mother attended the same church. Porter, 111 Ill. 2d at 404. This was insufficient to show that the defendant had suffered any prejudice. Porter, 111 Ill. 2d at 404. The evidence in this case is similarly scant. Defendant attempts to distinguish Porter because there is evidence in this case that the victim and LaFew actually knew each other. While this is undeniably true, it is also true that their relationship was fleeting in nature. On two or three occasions, they basically greeted each other. The salient fact in this case, as in Porter, is that they both were members of the same church. Porter teaches that this fact alone is insufficient to mandate the disqualification of a juror, and, though there is scant evidence in this case of an acquaintance, consisting of a small number of interactions between the victim and LaFew, we fail to see how those brief and minimal interactions truly differentiate this case from Porter. Accordingly, we hold that the trial court did not err in refusing to replace LaFew with an alternate juror.

IV. THE ADMISSION OF PORNOGRAPHIC IMAGES

Defendant next alleges error in the trial court's decision to allow the State to introduce certain pornographic images that were recovered from his computer. The trial court ruled that the State could elicit testimony about certain pornographic images depicting acts of pedophilia and bestiality and that the photographs would be admitted into evidence but not published to the jury. The trial court explained that this evidence was being admitted "for the limited purpose of--well, it's corroboration. [The victim] testified she was shown these things and the police recovered those items from his computers."

Defendant, citing, inter alia, People v. Romero, 66 Ill. 2d 325, 330-32 (1977), asserts that it was error for the trial court to admit this evidence of an other bad act simply to bolster the credibility of one of the State's witnesses. We agree. It is generally improper--with some exceptions not pertinent here--to admit evidence of other crimes simply to enhance the credibility of a prosecution witness. People v. Thingvold, 145 Ill. 2d 441, 459 (1991); People v. Turner, 78 Ill. App. 3d 82, 94 (1979) ("[E]vidence of other crimes may not be used to enhance the credibility of a State witness"). Plainly, the trial court erred in allowing the State to elicit testimony about these images.

However, as defendant concedes, this error was not included in his motion for a new trial and would normally be forfeited. People v. Bennett, 281 Ill. App. 3d 814, 823 (1996). He invites us to conduct plain-error review. Our supreme court has explained the plain-error rule as follows:

"[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the

defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved, 'regardless of the strength of the evidence.' (Emphasis in original.) [Citation.]" People v. Herron, 215 Ill. 2d 167, 186-87 (2005).

Defendant asserts that it is the second prong of the plain-error doctrine that is applicable here, that is, the admission of the other-crimes evidence was such a fundamental error that we should simply presume he was prejudiced and ignore his forfeiture of it.

This would be a strange result indeed, for, in ordinary circumstances where such an error is properly preserved, the issue is amenable to a harmless-error analysis. In People v. Lindgren, 79 Ill. 2d 129, 141 (1980), our supreme court, in assessing whether a conviction could stand where the State introduced evidence of an unrelated arson, stated, "a conviction will be upheld only if the properly admitted evidence is so overwhelming that no fair minded jury could have voted for acquittal [citations] or, to put it another way, only if the record affirmatively shows that the error was not prejudicial." In People v. Butler, 58 Ill. 2d 45, 49 (1974), the court observed, "We are not persuaded, however, that the possibility of one or more jurors concluding from these vague and indirect references that defendant had been initially arrested in connection with a different murder could have affected the guilty verdict." As an error concerning the admission of other-crimes evidence may be

deemed harmless in appropriate circumstances, we cannot say that such an error is so fundamental that it necessarily satisfies the second prong of the plain-error doctrine. That is, if such an error is not presumptively prejudicial in ordinary circumstances, we see no reason to deem it presumptively prejudicial here. Hence, we must consider this particular error in the context of the specific facts of this case.

Looking to its details, we do not view the error to be of sufficient magnitude to have deprived defendant of a fair trial. Quite simply, the victim testified to numerous incidents of sexual contact with defendant that started when she was nine years old and continued until a few months before her thirteenth birthday. She added that these occurred three or four times per week. The victim described various sex acts, including intercourse and oral sex. While the allegation that defendant possessed some deviant pornographic images certainly reflected negatively on defendant, it does not seem to us to be particularly prejudicial in light of the substantial testimony that defendant abused a child for a period of nearly four years. In People v. Nunley, 271 Ill. App. 3d 427 (1995), the defendant was on trial for murder and armed robbery. To help explain to the jury why the defendant confessed, the State presented substantial and gruesome evidence of an earlier crime for which the defendant was in custody. The reviewing court reversed, noting that the other-crimes evidence involved "conduct far more grotesque than that for which [the defendant] was on trial." Nunley, 271 Ill. App. 3d at 432. In this case, conversely, mere possession of pornographic images is less reprehensible than the crimes for which defendant was on trial. We thus see little prejudice here.

In short, the trial court should have excluded the evidence of which defendant complains. Defendant, however, did not properly preserve this error. Additionally, we cannot say that the error was "so serious that it affected the fairness of *** defendant's trial and challenged the integrity of the

judicial process." Herron, 215 Ill. 2d at 187. We therefore decline to find reversible plain error, and we reject defendant's argument on this issue.

## V. EXCESSIVE SENTENCING

Defendant finally argues that because he had previously been sentenced to 9 years' imprisonment on the first two counts of the indictment, it was beyond the power of the trial court to resentence him to 12 years' imprisonment after this court vacated his earlier convictions on these counts and remanded for further proceedings. See People v. McCutcheon , 68 Ill. 2d 101, 108 (1977). Defendant relies upon section 5--5--4 of the Unified Code of Corrections (Code) (730 ILCS 5/5--5--4 (West 2008)), which provides, in relevant part, as follows:

"Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing."

Thus, unless the increase in defendant's sentences was based on conduct occurring after the first time defendant was sentenced, the trial court erred in imposing longer sentences.

As an initial matter, the State argues that this issue was not properly preserved and is therefore forfeited. Defendant responds that we should review it for plain error. Generally, however, a sentence that does not comport with applicable statutory guidelines is beyond the power of a trial court and therefore void. People v. Williams, 179 Ill. 2d 331, 336 (1997) ("A sentence not authorized by statute is void"). A void sentence may be challenged at any time. People v. Roberson, 212 Ill. 2d 430, 440 (2004). Moreover, it has been held that " '[t]he imposition of an unauthorized

-13-

sentence affects substantial rights' and that plain error review extends to such matters." People v. Calhoun, 377 Ill. App. 3d 662, 667 (2007), quoting People v. Hicks, 181 Ill. 2d 541, 545 (1998). As defendant's contention is that his sentence violates the provisions of section 5--5--4 of the Code, we will review it here.

We must look at the trial court's ruling and see if the increase in sentence was based on conduct that occurred after defendant's original sentencing hearing. The State points to two considerations to justify the harsher sentences. It first notes the trial judge's observation that there was "nothing in the defendant's statement in allocution which would indicate to this court any remorse." The State also relies upon the testimony of Ann Young, who was involved with defendant's case when she worked for Family Advocate, an agency that provides case management and counseling services in cases of sexual abuse. Young testified that the fact that defendant "was now denying his own victimization" made it more likely that defendant would recidivate.

Neither of these considerations constitutes "conduct on the part of the defendant occurring after the original sentencing" within the meaning of section 5--5--4 of the Code. 730 ILCS 5/5--5--4 (West 2008). Our research reveals no case--nor has any been called to our attention--that has construed this phrase; hence, we must first construe the statute and ascertain the meaning of the phrase. In construing a statute, our primary goal is to ascertain and give effect to the intent of the legislature. People ex rel. Department of Public Aid v. Smith, 212 Ill. 2d 389, 397 (2004). Our primary guide in ascertaining the intent of the legislature in enacting this provision is the plain language of the statute. People v. De Filippo, 387 Ill. App. 3d 322, 334 (2008). Words, unless otherwise defined by the legislature, must be given their "ordinary and popularly understood meaning." Smith, 212 Ill. 2d at 397. Where that language is clear and unambiguous, it must be given

effect as it is written. People v. Kasp, 352 Ill. App. 3d 180, 185 (2004). In such cases, we have no occasion to resort to other aids of construction. People v. Pullen, 192 Ill. 2d 36, 42 (2000). We may, nevertheless, consult a dictionary to determine the plain meaning of an " 'otherwise undefined word or phase.' " People v. Fort, 373 Ill. App. 3d 882, 885 (2007), quoting People v. Skillom, 361 Ill. App. 3d 901, 909 (2005).

Section 5--5--4 refers to "conduct." "Conduct" is defined as "behavior in a particular situation or relation or on a specified occasion." Webster's Third New International Dictionary 474 (2002). As "conduct" requires "behavior," we do not believe that it encompasses holding a certain attitude toward one's crime or a belief about one's past. Rather, we hold that, by requiring subsequent conduct, the legislature intended some type of an act on the defendant's part to qualify under section 5--5--4. As the State has identified no subsequent conduct to justify the longer sentence imposed by the trial court, we reduce defendant's sentence on count II to nine years' imprisonment. Defendant's argument is moot with respect to the first count, as we have already vacated it. All other aspects of defendant's sentences are to remain as imposed by the trial court, including that they run consecutively.

## VI. CONCLUSION

In light of the foregoing, we vacate defendant's conviction and sentence with regard to the first count of the indictment. We also reduce defendant's sentence regarding the second count to nine years' imprisonment. We otherwise affirm the judgment of the circuit court of Winnebago County.

Vacated in part and affirmed as modified in part.

McLAREN, J., concurs.

PRESIDING JUSTICE ZENOFF, specially concurring:

I agree with the majority's analysis and result, but I feel constrained to write separately on the excessive-sentencing issue to point out the shortcomings of section 5--5--4 of the Unified Code of Corrections (Code) (730 ILCS 5/5--5--4 (West 2008)), which prohibits defendant's increased sentence. The council commentary summary to that section states that it "[l]imits the use of increased sentences where an original conviction or sentence has been overturned by a higher court." 730 ILCS Ann. 5/5--5--4, Council Commentary--1973, at 968 (Smith-Hurd 2008). The commentary goes on to explain that the provision was adopted to codify the rule set out by the United States Supreme Court in North Carolina v. Pearce, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), and followed by Illinois in People v. Baze, 43 Ill. 2d 298 (1969). In Pearce, the Court limited the power of a sentencing court to increase a sentence after reconviction following a new trial. Pearce, 395 U.S. at 725-26, 23 L. Ed. 2d at 669-70, 89 S. Ct. at 2080-81. It held that the fourteenth amendment's due process clause prevented the increase if it was motivated by the sentencing judge's vindictiveness. Pearce, 395 U.S. at 725-26, 23 L. Ed. 2d at 669-70, 89 S. Ct. at 2080-81. Later, in Alabama v. Smith, 490 U.S. 794, 802, 104 L. Ed. 2d 865, 874, 109 S. Ct. 2201, 2206 (1989), the Court said that there is no presumption of vindictiveness when a second sentence imposed after a trial is greater than a first sentence imposed after a guilty plea. It reasoned that even where the same judge imposes both sentences, the judge would most likely have greater information available after a trial, and the factors of leniency in consideration of a plea would be absent. Smith, 490 U.S. at 801, 104 L. Ed. 2d at 874, 109 S. Ct. at 2206.

Section 5--5--4 of the Code makes no such distinction between a plea and a trial. It just provides that when an appellate court overturns a conviction, the defendant cannot thereafter receive a higher sentence. Moreover, the statute makes no distinction based on the reason that a conviction

may have been set aside. The prohibition applies regardless of whether the case is sent back based on faulty admonitions or on an analysis of the substantive issues. The fact that the conviction is set aside on appeal as opposed to at the trial level triggers the application of the provision.

Thus, in People v. McCutcheon, 68 Ill. 2d 101, 104 (1977), when the appellate court vacated the defendant's guilty plea and the defendant then was convicted after a trial, the parties "agreed" that section 5--5--4 precluded a higher sentence. To be sure, the supreme court did not expressly approve that agreement; however, as this court has noted, "the supreme court did not disagree with the premise that McCutcheon could not receive a greater sentence where the appellate court vacated his guilty plea and remanded for him to plead anew." People v. Miller, 286 Ill. App. 3d 297, 302 (1997); see also People v. Jackson, 299 Ill. App. 3d 104, 116-17 (1998) (reading McCutcheon similarly).

This result in essence gives defendant a windfall. Although a defendant usually has an incentive to plead guilty--to get leniency in sentencing--the defendant in this scenario has no such incentive. That is, he has nothing to lose by going to trial after the first conviction is vacated by the appellate court regardless of the reasons--he might get acquitted, but even if he is convicted, he is guaranteed to come out no worse than he did when he pleaded guilty. The trial court is required to give him the same leniency that it gave him when he pleaded guilty, even though, in the end, he did not plead guilty. I think that the General Assembly, in attempting to codify Pearce, overlooked these important distinctions.

.